**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ADOC HOLDINGS, INC. (f/k/a Coda Holdings, Inc.), | ) | Case No.  13-11153 (CSS) |
| *et al.*, | ) | (Jointly Administered) |
| | ) | |
| | ) | |

Debtors.[1, 2]

**~~SECOND~~THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF
ADOC HOLDINGS, INC. AND ITS AFFILIATED DEBTORS**

Dated:  Wilmington, Delaware
~~September 24, 2013~~January 14, 2014

FOX ROTHSCHILD LLP
Jeffrey M. Schlerf (DE Bar No. 3047)
Citizens Bank Center
919 North Market Street, Suite 1600
P.O. Box 2323
Wilmington, Delaware  19899-2323
Telephone:  (302) 654-7444
Facsimile:  (302) 656-8920

*Counsel for the Debtors*

---

[1]	The Debtors in these chapter 11 cases, along with the last four digits of their respective federal employer identification numbers, are: Adoc Holdings, Inc. (1892); Adoc Automotive, Inc. (6800); Adoc Energy LLC (3053); Adoc Automotive (CA), Inc. (9109); EnergyCS LLC (1359); Lio Energy Systems Holdings LLC (3158); and Miles Electric Vehicles Limited (a Hong Kong entity).

[2]	On July 16, 2013, the Bankruptcy Court entered an order approving a modification to the caption of the Debtors' cases.  Pursuant to the Purchase Agreement and Sale Order, the Debtors were required to cease using the "Coda" name after closing of the Sale.

## TABLE OF CONTENTS

Page

*ARTICLE I: DEFINITIONS AND INTERPRETATION* ............................................................. 1
   *1.1*    *Definitions.* ............................................................................................................... 1
   *1.2*    *Interpretation; Application of Definitions; and Rules of Construction.* ........... 15
   *1.3*    *Exhibits, Schedules, Appendices and Plan Documents.* .................................... 16

*ARTICLE II: PROVISIONS FOR TREATMENT OF ADMINISTRATIVE CLAIMS*
           *AND PRIORITY TAX CLAIMS UNDER THE PLAN* .................................... 16
   *2.1*    *Introduction.* ........................................................................................................ 16
   *2.2*    *Administrative Claims and Priority Tax Claims.* ............................................... 16
   *2.3*    *Time for Filing Administrative Claims.* .............................................................. 16
   *2.4*    *Time for Filing Objections to Priority Claims and Priority Tax Claims.* .......... 17
   *2.5*    *Time for Filing of Fee Claims.* ........................................................................... 17
   *2.6*    *Treatment of Allowed Administrative Claims.* ................................................... 17
   *2.7*    *Treatment of Priority Tax Claims.* ...................................................................... 18
   *2.8*    *Settlement of Contested Administrative Claims, Priority Claims, Priority Tax*
           *Claims or Other Secured Claims.* ....................................................................... 18

*ARTICLE III: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS* ..................... 18
   *3.1*    *Classification of Claims and Equity Interests.* .................................................. 18

*ARTICLE IV: PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY*
           *INTERESTS* .......................................................................................................... 19
   *4.1*    *Satisfaction of Claims and Equity Interests* ...................................................... 19
   *4.2*    *Class 1:  Priority Claims* ..................................................................................... 19
   *4.3*    *Class 2:  Other Secured Claims.* ........................................................................ 20
   *4.4*    *Class 3: Deficiency Claims.* ................................................................................ 20
   *4.5*    *Class 4:  General Unsecured Claims.* ................................................................. 21
   *4.6*    *Class 5 WARN Priority Claim.* ........................................................................... 21
   *4.7*    *Class 6:  Equity Interests.* ................................................................................... 21
   *4.8*    *Class 7:  Subordinated Claims.* .......................................................................... 21
   *4.9*    *Limitation on Recovery for Claims Against More Than One Debtor.* ............... 22

*ARTICLE V: ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF*
           *REJECTION BY ONE OR MORE CLASSES OF CLAIMS* ............................. 22
   *5.1*    *Classes Entitled to Vote.* ..................................................................................... 22
   *5.2*    *Class Acceptance Requirement.* .......................................................................... 22
   *5.3*    *Cramdown and No Unfair Discrimination.* ........................................................ 22

*ARTICLE VI: MEANS FOR IMPLEMENTATION* ............................................................... 23
   *6.1*    *Substantive Consolidation of Debtors for Plan Purposes Only.* ....................... 23
   *6.2*    *Post-Effective Date Status* .................................................................................. 24
   *6.3*    *SAP Reserve* ........................................................................................................ 24
   *6.4*    *The Liquidating Trust.* ........................................................................................ 24

*6.5*    *Federal Income Tax Treatment of Liquidating Trust* ........................................ 30
*6.6*    *Setoffs.* ........................................................................................................... 32
*6.7*    *Noncertificated Liquidating Trust Interests.* ................................................... 32
*6.8*    *Dissolution of the Liquidating Trust.* .............................................................. 32
*6.9*    *Securities Exempt.* .......................................................................................... 32
*6.10*   *Approval of Plan Documents.* .......................................................................... 32
*6.11*   *Effectuating Documents; Further Transactions.* .............................................. 33
*6.12*   *Cancellation of Existing Securities and Agreements.* ..................................... 33
*6.13*   *Vesting of Assets.* ............................................................................................ 33
*6.14*   *Certain Provisions Concerning WARN Claims* .............................................. 33
*6.15*   *Tax Matters.* .................................................................................................... 33

*ARTICLE VII: PROVISIONS REGARDING DISTRIBUTIONS* ............................... 34
*7.1*    *Distribution Record Date.* ............................................................................... 34
*7.2*    *Allocation of Distributions; No Postpetition Interest on Claims.* .................... 34
*7.3*    *SAP Claim Distributions.* ................................................................................ 35
*7.4*    *Liquidating Trustee.* ........................................................................................ 35
*7.5*    *Disbursing Agent.* ............................................................................................ 35
*7.6*    *Delivery of Distributions.* ................................................................................ 35
*7.7*    *Manner of Payment Under Plan.* ..................................................................... 36

*ARTICLE VIII: PROCEDURES FOR CONTESTED CLAIMS* ................................. 36
*8.1*    *Objections to Claims.* ...................................................................................... 36
*8.2*    *No Distributions Pending Allowance.* .............................................................. 36
*8.3*    *Contested General Unsecured Claims Reserve.* .............................................. 36
*8.4*    *Distributions After Allowance.* ........................................................................ 37

*ARTICLE IX: SETTLEMENT PROCEDURES* ........................................................... 37
*9.1*    *Claims Administration.* .................................................................................... 37
*9.2*    *Settlement of Claims and Causes of Action.* ................................................... 37

*ARTICLE X: EXECUTORY CONTRACTS* ................................................................. 38
*10.1*   *Rejection of Executory Contracts.* ................................................................... 38
*10.2*   *Time for Filing Rejection Claims.* .................................................................... 39
*10.3*   *Reservation of Rights.* ..................................................................................... 39

*ARTICLE XI: CONDITIONS PRECEDENT TO CONFIRMATION AND THE*
        *EFFECTIVE DATE* ........................................................................................ 39
*11.1*   *Conditions Precedent to Confirmation.* ........................................................... 39
*11.2*   *Conditions Precedent to the Effective Date.* .................................................... 40
*11.3*   *Waiver of Conditions to Confirmation and Effective Date.* .............................. 40
*11.4*   *Effect of Failure of Conditions to the Effective Date.* ..................................... 40

*ARTICLE XII: EFFECT OF CONFIRMATION* ......................................................... 41
*12.1*   *Rights of Action/Reservation of Rights.* .......................................................... 41
*12.2*   *Satisfaction of Claims and Termination of Equity Interests.* ........................... 41
*12.3*   *Term of Injunctions or Stays.* .......................................................................... 42

*12.4*    **Injunction Against Interference With Plan.** ...................................... 42
*12.5*    **Releases and Injunction Related to Releases.** ................................. 42
*12.6*    **Settlement of Claims and Causes of Action Between Debtors, Creditors'
           Committee and Secured Parties.** ............................................... 45
*12.7*    **Disallowed Claims and Disallowed Interests.** .................................. 45
*12.8*    **Exculpation.** .................................................................. 45
*12.9*    **Injunctions.** .................................................................. 46
*12.10*   **Limitations on Actions Against Current Directors and Officers.** ...................... 46

***ARTICLE XIII: RETENTION OF JURISDICTION*** .................................................. 46

***ARTICLE XIV: MISCELLANEOUS PROVISIONS*** .................................................... 48
*14.1*    **Payment of Statutory Fees.** ................................................... 48
*14.2*    **Notices.** ..................................................................... 48
*14.3*    **Headings.** .................................................................... 49
*14.4*    **Governing Law.** ............................................................... 49
*14.5*    **Notice of Entry of Confirmation Order and Relevant Dates.** ...................... 49
*14.6*    **Modification of the Plan and Amendments.** ...................................... 49
*14.7*    **Revocation, Withdrawal or Non-Consummation of Plan.** ............................ 50
*14.8*    **Binding Effect.** .............................................................. 50
*14.9*    **Severability of Plan Provisions.** ............................................. 50
*14.10*   **No Admissions.** ............................................................... 50
*14.11*   **Dissolution of the Creditors' Committee.** ..................................... 51
*14.12*   **Time.** ........................................................................ 51
*14.13*   **Successors and Assigns.** ...................................................... 51
*14.14*   **Conflict between Plan, Disclosure Statement and Plan Documents.** ................ 51
*14.15*   **Substantial Consummation.** .................................................... 51
*14.16*   **Plan Exhibits.** ............................................................... 51

Adoc Holdings, Inc. (f/k/a Coda Holdings, Inc.),[3] and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases hereby collectively propose the following plan of liquidation:

## ARTICLE I:

## DEFINITIONS AND INTERPRETATION

1.1    *Definitions.*

The following terms used herein shall have the respective meanings defined below:

1.1.1    "*Administrative Claim*" means a Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; and (b) Fee Claims; provided, however, that the following claims shall be excluded from the definition of Administrative Claims: (i) all fees and charges assessed against the Estates pursuant to section 1930 of title 28 of the United States Code, 28 U.S.C. §§ 1–4001; and (b) claims arising under section 503(b)(1)(D) of the Bankruptcy Code; and (c) Deferred Fee Claims.

1.1.2    "*Administrative Claim Bar Date*" shall be such date that is twenty (20) days following the Effective Date.

1.1.3    "*Adoc Holdings*" means Adoc Holdings, Inc. (f/k/a Coda Holdings, Inc.), a Delaware corporation and a debtor and debtor in possession in the Chapter 11 Cases

1.1.4    "*Adoc Holdings Affiliated Debtors*" means Adoc Automotive, Inc. (f/k/a Coda Automotive, Inc.), Adoc Energy LLC (f/k/a Coda Energy LLC), Adoc Automotive (CA), Inc. (f/k/a Coda Automotive (CA), Inc.), EnergyCS LLC, Lio Energy Systems Holdings LLC and Miles Electric Vehicles Limited (a Hong Kong entity).

1.1.5     "*Advance*" has the meaning provided in Section 6.4.9(d).

1.1.6    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.1.7    "*Allowed*" means, with respect to a Claim, an Allowed Claim in a particular Class or category specified.

1.1.8    "*Allowed … Claim*" means an Allowed Claim of the type described.

1.1.8    1.1.9 "*Allowed Claim*" means a Claim for which a proof of claim was timely filed on or before the applicable Bar Date or for which a proof of claim was not required pursuant to the Bankruptcy Code, the Plan or an order of the Bankruptcy Court, and (i) as to which

---

[3] See footnote 2.

no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court or the Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with the Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the holder of such Claim and the Debtors or the Liquidating Trustee or (c) pursuant to the terms of the Plan; provided, however, that, notwithstanding anything herein to the contrary, by treating a Claim as an "Allowed Claim" under (i) above (the expiration of the Claims Objection Deadline or other applicable deadline), the Debtors do not waive their rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced. An Allowed Claim (i) includes a Contested Claim to the extent such Contested Claim becomes Allowed after the Effective Date and (ii) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Unless otherwise specified herein, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed Claim" shall not, for purposes of distributions under the Plan, include interest on such Claim accruing from and after the Petition Date.

1.1.9    ~~1.1.10~~ "*Assets*" means all of the Debtors' right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code and any proceeds, products, rents and profits of any of the foregoing.

1.1.10    ~~1.1.11~~ "*Automotive Share*" means one-third (1/3) of the Net Proceeds from the sale of the Tangible Automotive Assets located in China received by Purchaser after Purchaser has received from the sale of all Tangible Automotive Assets (i) Net Proceeds of $500,000, and (ii) reimbursement of all of the Purchaser's costs of liquidation from the proceeds of all Tangible Automotive Assets.

1.1.11    ~~1.1.12~~ "*Automotive Share Escrow*" means that certain escrow account or other appropriate vehicle established prior to the Effective Date for holding the Automotive Share for the benefit of General Unsecured Creditors.

1.1.12    ~~1.1.13~~ "*Avoidance Actions*" means all Causes of Action that arise under sections 510(c), 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, and any analogous provisions of applicable state law

1.1.13    ~~1.1.14~~ "*Ballot*" means the form of ballot approved by the Bankruptcy Court for voting on the Plan and distributed to each holder of a Claim in an Impaired Class entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon, in each case in form and substance acceptable to the Required Noteholder Parties and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

1.1.14    ~~1.1.15~~ "*Bankruptcy Code*" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.1.15    ~~1.1.16~~ "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of any withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

1.1.16    ~~1.1.17~~ "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and as applicable to the Chapter 11 Cases, and any general and Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

1.1.17    ~~1.1.18~~ "**Bar Date**" means any deadline for filing proofs of claim or requests for allowance of Administrative Claims against a Debtor, including, the General Bar Date, the 503(b)(9) Bar Date, the Government Bar Date or the Administrative Claim Bar Date, as applicable.

1.1.18    ~~1.1.19~~ "**Bar Date Order**" means the *Order Pursuant to Bankruptcy Rules 2002 and 3003 and Local Rule 3003-1 (I) Establishing Bar Dates for Filing Certain Proofs of Claim; (II) Establishing Ramifications for Failure to Comply Therewith, (III) Approving Proof of Claim Form and Bar Date Notice; and (IV) Approving Publication Notice and Publication Procedures*, entered on June 26, 2013 (Docket No. 311).

1.1.19    ~~1.1.20~~ "**Bridge Agent**" has the meaning set forth in the Intercreditor Agreement.

1.1.20    ~~1.1.21~~ "**Bridge Lenders**" means those lenders under the Bridge Loan.

1.1.21    ~~1.1.22~~ "**Bridge Loan**" means loans extended to Adoc Holdings under that certain Loan and Security Agreement, dated December 7, 2012, with FCO as administrative and collateral agent for the lenders thereunder.

1.1.22    ~~1.1.23~~ "**Business Day**" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.1.23    ~~1.1.24~~ "**Cash**" means legal tender of the United States of America.

1.1.24    ~~1.1.25~~ "**Cause of Action**" means, subject to Section 6.4.6 of the Plan, any action, proceeding, agreement, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  Causes of Action also include, subject to Section 6.4.6 of the Plan: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code;

(e) any state law fraudulent transfer claim; (f) any claim listed in the Plan Supplement; (g) Avoidance Actions; (h) commercial tort claims; (i) D&O Claims; (j) any Causes of Action against current or former Equity Interest holders of any Debtor, except to the extent such current or former Equity Interest holders constitute Current Officers and Directors; and (k) any Causes of Action against Lishen Miles Power Battery System Co., Ltd. and Tianjin Lishen Battery Joint Stock Co., Ltd. and/or any affiliate thereof.  ~~Nothwithstanding~~Notwithstanding anything in this paragraph, Causes of Action shall exclude the Excluded Causes of Action.

1.1.25     ~~1.1.26~~  "***Chapter 11 Cases***" means the cases commenced under chapter 11 of the Bankruptcy Code, pending before the Bankruptcy Court with respect to each of the Debtors and jointly administered as *In re Adoc Holdings, Inc., et al.*, Case No. 13-11153 (CSS).

1.1.26     ~~1.1.27~~  "***Claim***" has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.1.27     ~~1.1.28~~ "***Claims Objection Deadline***" means, for each Claim, the latest of (a) the date that is one hundred and eighty (180) days after the Effective Date, (b) as to a particular Claim, 180 days after the filing of a Proof of Claim, or request for payment of such Claim, and (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to Claims.

1.1.28     ~~1.1.29~~ "***Class***" means a category of holders of Claims or Equity Interests classified by the Plan pursuant to section 1122(a) of the Bankruptcy Code.

1.1.29     ~~1.1.30~~ "***Collateral***" means any property or interest in property of any Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, and which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.30     ~~1.1.31~~ "***Confirmation Date***" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Cases.

1.1.31     ~~1.1.32~~ "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court, pursuant to section 1128 of the Bankruptcy Code, to consider the confirmation of the Plan under section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.1.32     ~~1.1.33~~ "***Confirmation Objection Deadline***" means the date set forth in the order of the Bankruptcy Court by which a creditor or interest holder or other party in interest must file an objection to confirmation of the Plan.

1.1.33     ~~1.1.34~~ "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan, pursuant to section 1129 of the Bankruptcy Code.

1.1.34     ~~1.1.35~~ "***Contested***" means, with respect to any Claim or Interest, any Claim or Interest that is not yet allowed, including but not limited to, any Claim (i) that is listed in the Schedules as disputed, unliquidated, and/or contingent and as to which a Proof of Claim has not been filed with the Bankruptcy Court; (ii) that is listed in the Schedules, but not as disputed,

unliquidated, or contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, and for which (A) the Proof of Claim amount exceeds the amount indicated in the Schedules, and/or (B) the Proof of Claim asserts priority greater than the priority set forth in the Schedules; (iii) that is not listed in the Schedules or is listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (iv) to the extent it is a Claim arising under a rejected Executory Contract, proof of which Claim is to be filed with the Bankruptcy Court before the deadline for filing such Claim.

1.1.35    ~~1.1.36~~ "*Credit Bid*" has the meaning provided in Section 4.1 of the Plan.

1.1.36    ~~1.1.37~~ "*Creditors' Committee*" means the statutory Creditors' Committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

1.1.37    ~~1.1.38~~ "*CRO*" means John Madden in his capacity as the Debtors' Chief Restructuring Officer and any successor to such Person.

1.1.38    ~~1.1.39~~ "*Current Officers and Directors*" means officers or directors of the Debtors serving in such capacities as of May 1, 2013.

1.1.39    ~~1.1.40~~ "*D&O Claims*" means any Cause of Action against the Officers and Directors, including any Causes of Action for breaches of fiduciary duty or corporate waste or for any claims related to employee matters, provided that D&O Claims shall not include any Excluded Causes of Action.

1.1.40    ~~1.1.41~~ "*Debtor Released Claims*" has the meaning set forth in Section 12.5 of the Plan.

1.1.41    ~~1.1.42~~ "*Debtor Releasees*" has the meaning set forth in Section 12.5 of the Plan.

1.1.42    ~~1.1.43~~ "*Debtors*" means, collectively, Adoc Holdings and the Adoc Holdings Affiliated Debtors.

1.1.43    "*Deferred Fee Claim*" has the meaning set forth in Section 2.5 of the Plan.

1.1.44    "*Deficiency Claims*" means all Claims of the Prepetition Secured Parties Allowed in the amount of $63,024,583[4], comprised of the sum of (i) the aggregate amount outstanding under the Notes as of the Petition Date less the portion of the Priority Enhanced Notes included within the Credit Bid, plus (ii) the aggregate amount outstanding under the Term Loan as of the Petition Date, plus (iii) the aggregate amount outstanding under the Second Term Loan as of the Petition Date.

---

[4]  The exact amount is subject to verification by the Prepetition Secured Parties.

1.1.45    "*Demand Amount*" means any amount demanded by the Liquidating Trust relating to any Causes of Action and/or Claims of the Liquidating Trust related to Causes of Action.

1.1.46    "*DIP Financing*" means the postpetition financing provided to Adoc Holdings by the DIP Secured Parties pursuant to and under the DIP Loan Agreement and the DIP Order.  The DIP Financing was guaranteed by the Adoc Holdings Affiliated Debtors.

1.1.47    "*DIP Loan Agreement*" means the DIP Loan Agreement, dated as of May 8, 2013, as amended from time to time in accordance with the provisions thereof.

1.1.48    "*DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361,362, 363(c), 363(e), 364(c), 364(d)(l) and 364(e) and (B) Utilize Cash Collateral of Prepetition Secured Parties Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. § 361, 362, 363 and 364, and (III) Granting Related Relief*, entered by the Bankruptcy Court on May 29, 2013 [D.I. 187].

1.1.49    "*DIP Secured Parties*" means FCO, as agent, and the lenders party to the DIP Financing under the DIP Order.

1.1.50    "*Disallowed*" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

1.1.51    "*Disbursing Agent*" means Kurtzman Carson Consultants, LLC, or such other Person designated in the Plan Supplement with the duties set forth in Section 7.6.

1.1.52    "*Disclosure Statement*" means the Disclosure Statement, dated August 2, 2013 filed with respect to the Plan, as it may be amended or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.1.53    "*Distribution Record Date*" means the Effective Date.

1.1.54    "*Effective Date*" means the first Business Day after which all the conditions to the effectiveness of the Plan, as specified in Section 11.2 of the Plan have been satisfied or waived in accordance with the provisions of Section 11.3 of the Plan.

1.1.55    "*Enhanced Notes*" has the meaning set forth in the Intercreditor Agreement.

1.1.56    "*Equity Interest*" means any ownership interest in any of the Debtors, including any share of preferred stock, share of common stock, membership interest or other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such preferred stock, common stock, membership interest or other ownership interest.

1.1.57    "*Estate*" means the estate of any Debtor created by section 541 of the Bankruptcy Code upon commencement of such Debtor's Chapter 11 Case.

1.1.58    "*Excluded Causes of Action*" means any Cause of Action sold to the Purchaser in accordance with the Sale Order and the Purchase Agreement, released in the DIP Order, Sale Order or in the Plan, or otherwise resolved by the Debtors' Estates prior to the Effective Date of the Plan.

1.1.59    "*Exculpated Parties*" has the meaning set forth in Section 12.8 of the Plan.

1.1.60    "*Executory Contract*" means any unexpired executory contract or lease entered into prior to the Petition Date, as contemplated by section 365 of the Bankruptcy Code, in effect on the Petition Date, between any of the Debtors and any other Person or Persons and which has neither been assumed nor rejected prior to the Confirmation Date pursuant to section 365(a) of the Bankruptcy Code.

1.1.61    "*FCO*" means FCO MA Coda Holdings, LLC.

1.1.62    "*Fee Cap*" has the meaning set forth in Section 2.5 of the Plan.

1.1.63    1.1.62 "*Fee Claim*" means a Claim of a Professional Person for the allowance of compensation and reimbursement of expenses pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and a Claim of a member of the Creditors' Committee for the reimbursement of its expenses, in each case incurred prior to the Effective Date.

1.1.64    1.1.63 "*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction entered by the Clerk of the Bankruptcy Court or such other court on the docket in the Chapter 11 Cases or the docket of such other court, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 3008 or 9024 may be filed relating to such order.

1.1.65    1.1.64 "*Former Officers and Directors*" means any officers and directors of the Debtors other than Current Officers and Directors.

1.1.66    1.1.65 "*General Bar Date*" means August 6, 2013 at 4:00 p.m. Prevailing Eastern Time, as set forth in the Bar Date Order.

1.1.67   ~~1.1.66~~ "*General Unsecured Claim*" means any Claim against any of the Debtors (including the WARN Class Unsecured Non-Priority Claim) that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Prepetition Secured Claim, an Other Secured Claim, a Deficiency Claim, or the WARN Class Priority Claim.

1.1.68   ~~1.1.67~~ "*Government Bar Date*" means December 9, 2013 at 4:00 p.m. Prevailing Eastern Time, as set forth in the Bar Date Order.

1.1.69   ~~1.1.68~~ "*Governmental Unit*" shall have the meaning ascribed thereto in section 101(27) of the Bankruptcy Code.

1.1.70   ~~1.1.69~~ "*GUC-Appointed Board Member*" means the Liquidating Trustee Board Member initially designated by the Creditors' Committee.

1.1.71   ~~1.1.70~~ "*GUC Beneficial Interests*" means the Beneficial Interests in the Liquidating Trust to be distributed to holders of General Unsecured Claims.

1.1.72   ~~1.1.71~~ "*Holder Released Claims*" has the meaning set forth in Section 12.5 of the Plan.

1.1.73   ~~1.1.72~~ "*Holder Releasees*" has the meaning set forth in Section 12.5 of the Plan.

1.1.74   ~~1.1.73~~ "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.1.75   ~~1.1.74~~ "*Intercompany Claim*" means any Claim held by a Debtor or any of its non-Debtor Affiliates against a Debtor.

1.1.76   ~~1.1.75~~ "*Intercreditor Agreement*" means that certain Amended and Restated Intercreditor Agreement dated December 7, 2012, as amended from time to time, by and among the Secured Parties.

1.1.77   ~~1.1.76~~ "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.1.78   ~~1.1.77~~ "*IRS*" means the United States Internal Revenue Service.

1.1.79   ~~1.1.78~~ "*Lender Beneficial Interests*" means the Beneficial Interests in the Liquidating Trust to be distributed to holders of Allowed Deficiency Claims.

1.1.80   ~~1.1.79~~ "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.81   ~~1.1.80~~ "*Liquidating Trust*" means the uncertified trust created pursuant to the Plan and the Liquidating Trust Documents.

8

1.1.82   1.1.81 "*Liquidating Trust Account*" means an account to be established by the Liquidating Trustee and funded by the (i) Remaining Cash; (ii) Automotive Share Escrow; (iii) SAP Residual Funds; (iv) Undeliverable Plan Distributions; and (v) Liquidating Trust Recoveries.

1.1.83   1.1.82 "*Liquidating Trust Agreement*" means the agreement governing the Liquidating Trust, dated as of the Effective Date, and which shall be filed as part of the Plan Supplement.

1.1.84   1.1.83 "*Liquidating Trust Assets*" means any and all rights, title and interests in the Assets as of the day prior to the Effective Date including, without limitation, (i) the Remaining Cash, (ii) Causes of Action, including without limitation the Causes of Action identified on the Retained Action Schedule, and proceeds thereof, including Liquidating Trust Recoveries, (iii) the Automotive Share, (iv) the SAP Residual Funds, (v) Undeliverable Plan Distributions, (vi) the Liquidating Trust Reserve, and (v) all other Assets of any kind or nature of any of the Debtors, other than (a) Assets sold pursuant to the Sale, (b) the proceeds of the Tangible Automotive Assets, (c) funds in the SAP Reserve, and (d) Excluded Causes of Action.

1.1.85   1.1.84 "*Liquidating Trust Beneficial Interests*" means, collectively, the GUC Beneficial Interests and the Lender Beneficial Interests.

1.1.86   1.1.85 "*Liquidating Trust Board*" is comprised of the Liquidating Trust Board Members and holds such rights and responsibilities as set forth in the Liquidating Trust Agreement.

1.1.87   1.1.86 "*Liquidating Trust Board Members*" means, collectively, Notes-Appointed Board Member, the GUC-Appointed Board Member and the Liquidating Trustee.

1.1.88   1.1.87 "*Liquidating Trust Distribution*" means the distributions of Cash (or other property) to be made by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Documents.

1.1.89   1.1.88 "*Liquidating Trust Documents*" means the Liquidating Trust Agreement and any other documents or instruments concerning or relating to the Liquidating Trust, and which shall be filed as part of the Plan Supplement.

1.1.90   1.1.89 "*Liquidating Trustee*" means such Person as may be designated by the Note-Appointed Board Member and the GUC-Appointed Board Member in the Plan Supplement and any successor to such Person.

1.1.91   1.1.90 "*Liquidating Trust Recoveries*" means, at any time, the amount of Cash or other consideration obtained by or paid to the Liquidating Trustee (or other Person acting on behalf of the Liquidating Trust) in connection with the liquidation of any Causes of Action.

1.1.92   1.1.91 "*Liquidating Trust Reserve*" means an account or record entry to be established by the Liquidating Trustee and funded pursuant to Section 6.4.9(d) and (e) of the

Plan to be used by or on behalf of the Liquidating Trust for fees, costs and expenses directly incurred by the Liquidating Trust or its counsel in connection with the pursuit of the Causes of Action.

1.1.93    "*Litigation Lenders*" means the Persons that have committed to make the Advance as set forth in Section 6.4.9(d).

1.1.94    1.1.92 "*Net Proceeds*" means the proceeds from the sale or realization on an asset actually received by the Person entitled to such proceeds, less the amount of all expenses, taxes and fees related to the sale of such asset or class of assets, as applicable.

1.1.95    1.1.93 "*Noteholders*" means the holders of the Notes.

1.1.96    1.1.94 "*Notes*" has the meaning set forth in the Intercreditor Agreement and shall include the Priority Enhanced Notes, the Enhanced Notes and the Secondary Enhanced Notes.

1.1.97    1.1.95 "*Notes Agent*" means FCO as collateral agent for the Noteholders.

1.1.98    1.1.96 "*Notes Appointed Board Member*" means the Liquidating Trust Board Member initially designated by the Required Noteholder Parties in the Plan Supplement and any successor thereto.

1.1.99    1.1.97 "*Notice of Confirmation*" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Plan Administrator (and paid for out of the Consummation Account) to the holders of Claims and Equity Interests.

1.1.100    1.1.98 "*Officers and Directors*" means, collectively, the Current Officers and Directors and the Former Officers and Directors of any of the Debtors.

1.1.101    1.1.99 "*Other Secured Claim*" means, other than Claims of the Secured Parties, any Claim secured by a Lien on Collateral, which is not void or voidable under the Bankruptcy Code or any other applicable law, to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.1.102    1.1.100 "*Person*" means an individual, partnership, corporation, business trust, estate, limited liability company, limited liability partnership, joint stock company, trust, unincorporated association, unincorporated organization, joint venture or any other entity, but not any government, governmental agency or any subdivision, department or other instrumentality thereof unless otherwise provided in section 101(41) of the Bankruptcy Code.

1.1.103    1.1.101 "*Petition Date*" means as to Adoc Holdings, Inc., Adoc Automotive, Inc., Adoc Energy LLC, Adoc Automotive (CA), Inc. and EnergyCS LLC, May 1, 2013, the date on which those Debtors commenced their respective Chapter 11 Cases; and it means

June 11, 2013 as to Lio Energy Systems Holdings LLC and Miles Electric Vehicles Limited, the date on which those two Debtors commenced their respective Chapter 11 Cases.

1.1.104   ~~1.1.102~~ "***Plan***" means this chapter 11 plan of liquidation for the Debtors proposed by the Debtors under chapter 11 of the Bankruptcy Code, including all exhibits, supplements (including the Plan Supplement) appendices and schedules hereto, either in its or their present form or as it or they may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.1.105   ~~1.1.103~~ "***Plan Distribution***" means an ~~Electing WARN Claim Distribution,~~ SAP Reserve Distribution ~~or~~and Liquidating Trust Distribution.

1.1.106   ~~1.1.104~~ "***Plan Documents***" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.3 of the Plan, as the same may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof, all of which shall be in form and substance acceptable to the Required Noteholder Parties and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

1.1.107   ~~1.1.105~~ "***Plan Supplement***" means the separate appendix to the Plan, which is incorporated herein by reference, to be filed with the Bankruptcy Court on or before the date that is five (5) Business Days prior to the Confirmation Objection Deadline, containing among other things, the Plan Documents.  The Plan Supplement may be amended, supplemented or otherwise modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Plan.

1.1.108   ~~1.1.106~~ "***Prepetition Secured Parties***" means the Noteholders, the Notes Agent, the Term Loan Agent, the Term Loan Lender, and the Second Term Loan Lender, each in its capacity as such.  The defined term Prepetition Secured Parties does not include the DIP Secured Parties in their capacities as lenders under the DIP Financing.

1.1.109   ~~1.1.107~~ "***Prepetition Secured Obligations***" means the Notes, the Term Loan, and the Second Term Loan.

1.1.110   ~~1.1.108~~ "***Priority Claim***" means any Claim against any of the Debtors to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code other than the WARN Class Priority Claim, an Administrative Claim or a Priority Tax Claim.

1.1.111   ~~1.1.109~~ "***Priority Enhanced Noteholders***" means those holders of Priority Enhanced Notes.

1.1.112   ~~1.1.110~~ "***Priority Enhanced Notes***" has the meaning set forth in the Intercreditor Agreement.

1.1.113   ~~1.1.111~~ "***Priority Tax Claim***" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

1.1.114    1.1.112 "***Professional Person***" means a Person retained or to be compensated for services rendered or costs incurred by either the Debtors or the Creditors' Committee on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

1.1.115    1.1.113 "***Proof of Claim***" means the proof of claim that must have been filed by a holder of a Claim by the Bar Date.

1.1.116    1.1.114 "***Pro Rata***" means, as applicable, (i) the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in the same Class, or (ii) the proportion that the Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in all Classes, in each case (a) excluding Disallowed Claims, and (b) as calculated by the Liquidating Trustee, if applicable, or as determined or estimated by the Bankruptcy Court.

1.1.117    1.1.115 "***Purchase Agreement***" means the Asset Purchase Agreement by and among the Debtors and the Purchaser dated as of June 11, 2013, approved by the Bankruptcy Court by entry of the Sale Order, as amended from time to time in accordance with the terms thereof.

1.1.118    1.1.116 "***Purchaser***" means Coda Energy Holdings LLC, a Delaware limited liability company, as designee of and together with FCO, all as more fully set forth in the Sale Order, the Purchase Agreement and the Bill of Sale evidencing the Sale.

1.1.119    1.1.117 "***Related Persons***" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants), acting in such capacity, and any Person claiming by or through any of them.

1.1.120    1.1.118 "***Reorganized Debtor***" means one of the Debtors, if any, as reorganized pursuant to Section 6.2 of the Plan, or any successor thereto by merger, consolidation or otherwise.

1.1.121    1.1.119 "***Remaining Cash***" means any Cash remaining in the Debtors' Estates as of the Effective Date, including, for the avoidance of doubt, all SAP Residual Funds if and when received by the Liquidating Trust.

1.1.122    1.1.120 "***Required Noteholder Parties***" means the Notes Agent and, as applicable, first, the Noteholders holding at least 50% in amount of the Deficiency Claim allocable to the Priority Enhanced Notes until the Deficiency Claim allocable to the Priority Enhanced Notes has been satisfied in full; then, second, the Noteholders holding at least 50% in amount of the Deficiency Claim allocable to the Enhanced Notes until the Deficiency Claim allocable to the Enhanced Notes has been satisfied in full; then, third, the Noteholders holding at least 50% in amount of the Deficiency Claim allocable to the Secondary Enhanced Notes (as defined in the Intercreditor Agreement) until the Deficiency Claim allocable to the Secondary Enhanced Notes

has been satisfied in full; and then, fourth, the Noteholders holding at least 50% in amount of the remaining Deficiency Claim allocable to the Notes.

1.1.123    1.1.121 "**Retained Action Schedule**" means the schedule of Claims and Causes of Action to be transferred to and retained and enforced by the Liquidating Trust in accordance with Bankruptcy Code section 1123(b)(3)(B). The Retained Action Schedule shall be included in the Plan Supplement and may be amended and/or modified on or before the Effective Date.

1.1.124    1.1.122 "**RSA**" means the Restructuring Support Agreement dated April 30, 2013 by and among Adoc Holdings and certain of its subsidiaries, the lenders party to the Bridge Loan, certain Noteholders, the Term Loan Lender, the Bridge Agent, the Notes Agent and the Term Loan Agent, as amended by that certain First Amended Restructuring Support Agreement dated June 11, 2013, as further amended or supplemented from time to time.

1.1.125    1.1.123 "**RSA Lender**" means any Noteholder, Term Loan Lender or Second Term Loan Lender that is a party to or otherwise bound by the RSA.

1.1.126    1.1.124 "**SAP Claims**" means Administrative Claims, Priority Claims, Priority Tax Claims or Other Secured Claims.

1.1.127    1.1.125 "**SAP Reserve**" means a reserve established as of the Effective Date pursuant to Section 6.3.1 of the Plan to reserve Cash for distributions to Allowed SAP Claims.

1.1.128    1.1.126 "**SAP Reserve Distribution**" means a distribution by the Disbursing Agent at the direction of the Liquidating Trustee from the SAP Reserve to the holder of an Allowed SAP Claim as set forth in Section 7.3 of the Plan.

1.1.129    1.1.127 "**SAP Residual Funds**" means any Cash remaining in the SAP Reserve after all SAP Reserve Distributions have been made.

1.1.130    1.1.128 "**Sale**" means the sale transaction consummated pursuant to the Purchase Agreement and the Sale Order.

1.1.131    1.1.129 "**Sale Order**" means the *Order Authorizing (I) the Sale of Substantially All of the Non-Automotive Assets the Debtors Free and Clear of All Claims Liens, Liabilities, Rights, Interests and Encumbrances, (II) the Debtors' Entry into and Performance of their Obligations Under the Asset Purchase Agreement, (III) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (IV) Related Relief*, entered by the Bankruptcy Court on June 11, 2013 [D.I. 252].

1.1.132    1.1.130 "**Schedules**" means the schedules of assets and liabilities, the list of holders of Equity Interests and the statement of financial affairs filed by each of the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended at any time through the Confirmation Date in accordance with Bankruptcy Rule 1009.

1.1.133    1.1.131 "*Secondary Enhanced Notes*" has the meaning set forth in the Intercreditor Agreement.

1.1.134    1.1.132 "*Second Term Loan*" means term loans extended to Adoc Holdings by the Term Loan Lender under that certain Second Term Loan Letter Agreement, entered into on June 5, 2012.

1.1.135    1.1.133 "*Second Term Loan Lender*" means aeris CAPITAL Archer, L.P., as lender under the Second Term Loan.

1.1.136    1.1.134 "*Secured Parties*" means the DIP Secured Parties and the Prepetition Secured Parties.

1.1.137    1.1.135 "*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

1.1.138    1.1.136 "*Subordinated Claims*" means any Claim which is subordinated pursuant to section 510(b) or 510(c) of the Bankruptcy Code, and shall include any Claim arising from the rescission of a purchase or sale of any Equity Interest, any Claim for damages arising from the purchase or sale of any Equity Interest, or any Claim for reimbursement, contribution, or indemnification on account of any such Claim.

1.1.139    1.1.137 "*Tangible Automotive Assets*" means all tangible Assets of the Debtors not acquired by the Purchaser pursuant to the Sale Order, including, without limitation, subject to the right to receive the proceeds from the sale of the Debtors' Assets relating to the automotive business as set forth in Section 2.1(a)(xvii) of the Purchase Agreement, all Assets of the Debtors relating to the automotive business of the Debtors, wherever located, including machinery, tooling and inventory located in China and those Assets identified on Schedule 2.2(a)(ix) of the Purchase Agreement.

1.1.140    1.1.138 "*Term Loan*" means term loans extended to Adoc Holdings by the Term Loan Lender, under that certain Term Loan Letter Agreement, entered into on February 10, 2012.

1.1.141    1.1.139 "*Term Loan Agent*" means aeris CAPITAL Archer, L.P., as agent under the Term Loan.

1.1.142    1.1.140 "*Term Loan Lender*" means aeris CAPITAL Archer, L.P., as lender under the Term Loan and the Second Term Loan.

1.1.143    1.1.141 "*Undeliverable Plan Distributions*" means undeliverable or unclaimed Plan Distributions under Section 7.7 of the Plan.

1.1.144    1.1.142 "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

1.1.145    1.1.143 "*Voting Deadline*" means October 25, 2013 January 14, 2014 at 4 5:00 p.m. (prevailing Pacific time).

14

1.1.146   ~~1.1.144~~ "***Voting Procedures Order***" means the Order entered by the Bankruptcy Court on September 24, 2013, approving the Disclosure Statement and voting procedures and related solicitation procedures.

1.1.147   ~~1.1.145~~ "***WARN Act***" means the Worker Adjustment and Retraining Notification Act codified at 28 U.S.C. §§ 2101 to 2109, and any applicable regulations.

1.1.148   ~~1.1.146~~ "***WARN Class***" means the class of WARN Class Members ~~to be certified on the Effective Date pursuant to Rule 23 of the Federal Rules of Civil Procedure as incorporated into the Bankruptcy Rules pursuant to Rule 7023.~~ pursuant to the WARN Settlement.

1.1.149   ~~1.1.147~~ "***WARN Class Member***" means  a member of the WARN Class.

~~1.1.148   "***WARN Class Opt-Out***" means any former employee of the Debtor eligible to be a WARN Class Member electing to opt-out of the WARN Class.~~

1.1.150   ~~1.1.149~~ "***WARN Class Priority Claim***" means the Allowed Claim of the WARN Class in the amount of $430,000 granted pursuant to the WARN Settlement.

1.1.151   "***WARN Class Priority Beneficial Interest***" means the Beneficial Interest in the Liquidating Trust to be distributed to the holder of the WARN Class Priority Claim.

1.1.152   ~~1.1.150~~ "***WARN Class Unsecured Non-Priority Claim***" means the Allowed General Unsecured Claim of the WARN Class granted pursuant to the WARN Settlement in the amount ~~equal to the difference between (a) the maximum amount of salary and benefits that could be owed to the WARN Class Members under WARN Act as a result of their employment loss and (b) the proceeds of the WARN Class Priority Claim actually collectively received by the WARN Class Members.~~ of $1,570,000.

~~1.1.151   "***WARN Escrow Account***" has the meaning set forth in Section 4.6~~

1.1.153   ~~1.1.152~~ "***503(b)(9) Bar Date***" means August 6, 2013 at 4:00 p.m. Prevailing Eastern Time, as set forth in the Bar Date Order.

1.1.154   ~~1.1.153~~ "***WARN Settlement***" means the settlement ~~reached between the Debtors and the WARN Class pursuant to which the Debtors have agreed, subject to the Court's approval upon the filing of a motion by the Debtors, to provide the WARN Class with the WARN Priority Claim and the WARN Class Unsecured Non-Priority Claim on the terms and conditions set forth in the  definitive documentation evidencing such settlement.~~ approved by the Bankruptcy Court pursuant to the Final Order Approving Settlement Between the Debtors and the WARN Class Plaintiffs entered on the docket of the Bankruptcy Cases on November 19, 2013 [D.I. 591].

1.1.155   "***WARN Settlement Agreement***" means the Settlement and Release Agreement dated as of October 1, 2013 between Tony Bulchak, Individually and as Class Representative, and the Debtors evidencing the WARN Settlement filed with the Bankruptcy Court as D.I. 499.

1.2     *Interpretation; Application of Definitions; and Rules of Construction.*

Whenever from the context it appears appropriate, each term stated in either the singular or plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and neutral. Unless otherwise specified, all article, section, schedule or exhibit references in the Plan are to the respective article in, section in, schedule to, or exhibit to the Plan, as the same may be amended, waived, supplemented or modified from time to time. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clause contained herein. Except as otherwise expressly provided herein, a term used herein that is not defined herein and is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan; provided, however, that "or" is disjunctive. The words "includes" and "including" are without limitation.

1.3     *Exhibits, Schedules, Appendices and Plan Documents.*

All exhibits, schedules and appendices to the Plan as well as the Plan Documents and the Plan Supplement are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents shall be filed with the Clerk of the Bankruptcy Court no later than five (5) Business Days prior to the Confirmation Objection Deadline. Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

> Kurtzman Carson Consultants LLC
> Attention: Adoc Holdings
> 2335 Alaska Avenue
> El Segundo, CA 90245
> Telephone: (866) 381-9100
> E-mail: codainfor@kccllc.com

## ARTICLE II:

## PROVISIONS FOR TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS UNDER THE PLAN

2.1     *Introduction.*

The Plan is premised upon the substantive consolidation of the Debtors, as set forth in more detail in Section 6.1 below, for the purposes of voting, determining which Claims and Equity Interests will be entitled to vote to accept or reject the Plan, confirmation of the Plan and the resultant discharge of and cancellation of Claims and Equity Interests and distribution of Assets, interests and other property under the terms herein. Based on the substantive consolidation of the Debtors under the Plan, Intercompany Claims shall not be classified and no Plan Distribution shall be made in respect of Intercompany Claims.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in another Class or Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Class(es).  A Claim is also placed in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

2.2    ***Administrative Claims and Priority Tax Claims.***

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Deferred Fee Claims and Priority Tax Claims are not designated as Classes of Claims for purposes of the Plan.

2.3    ***Time for Filing Administrative Claims.***

All requests for payment of an Administrative Claim, other than a Fee Claim, must be filed with the Bankruptcy Court and served on counsel for (i) the Debtors, (ii) the Notes Agent, (iii) the Creditors' Committee, and (iv) the Liquidation Trust no later than the Administrative Claim Bar Date, or else such Administrative Claim shall be barred or discharged.  Unless a party in interest objects to an Administrative Claim on or before the Claims Objection Deadline (or such later date as extended by the Bankruptcy Court at the request of a party in interest), such Administrative Claim shall be deemed Allowed in the amount requested.  In the event of a timely filed objection to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  Requests for payment of an Administrative Claim, other than a Fee Claim, must include at a minimum: (i) the name of the Debtor(s) that are purported to be liable for the Administrative Claim; (ii) the name of the holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) all supporting documentation for the Administrative Claim.

2.4    ***Time for Filing Objections to Priority Claims and Priority Tax Claims.***

Unless a party in interest objects to a Priority Claim or Priority Tax Claim on or before the Claims Objection Deadline (or such later date as extended by the Bankruptcy Court at the request of a party in interest), such Priority Claim or Priority Tax Claim shall be deemed Allowed in the amount requested.  In the event of a timely filed objection to a Priority Claim or Priority Tax Claim, the Bankruptcy Court shall determine the Allowed amount of such Priority Claim or Priority Tax Claim.

2.5    ***Time for Filing and Treatment of Fee Claims.***

All final applications seeking payment of Fee Claims must be filed no later than thirty (30) days after the Effective Date and served on counsel for (i) the Debtors, (ii) the Notes Agent, (iii) the Creditors' Committee, and (iv) the Liquidating Trust.  Objections to such final fee applications must be filed sixty (60) days after the Effective Date.  Any party in interest may object to any application or request for compensation or reimbursement on account of a Fee Claim.  Any Fee Claim that is not filed on or before the deadline set forth in this Section 2.5 shall result in the Fee Claim being forever barred and subject to the injunctions contained in Article 12 of this Plan.  A Fee Claim in respect of which a final fee application has been properly and timely filed and

served shall become an Allowed Administrative Claim only to the extent Allowed by Final Order. The Liquidating Trust shall be deemed a party in interest for purposes of this Section.

Notwithstanding anything set forth in the Plan or otherwise, the aggregate amount of Fee Claims allowed in the Bankruptcy Cases shall not exceed an amount equal to (a) [$2,550,000] in fees and (b) costs approved by the Bankruptcy Court (the "*Fee Cap*"). If the aggregate amount of allowable Fee Claims is greater than the Fee Cap, then the allowable Fee Claims of each Professional Person shall be reduced on a ratable basis so that the aggregate amount of Fee Claims actually Allowed does not exceed the Fee Cap. Upon the entry of a Final Order Allowing the Fee Clams of a Professional Person, such Person shall be entitled to retain on a final basis all Cash paid by the Debtors as of the Effective Date in respect of Allowed Fee Claims. Any Allowed Fee Claims that were unpaid as of the Effective Date shall be referred to herein as "*Deferred Fee Claims*" and shall be paid solely as set forth in Section 6.4.10 below. The Claims of Professional Persons employed by the Creditors' Committee and expenses of the members of the Creditors' Committee members incurred after the Effective Date in accordance with Section 14.1214.11 hereof shall be ~~paid by the Liquidating Trust from the SAP Reserve~~Allowed without the need for further application to the Bankruptcy Court, but shall be subject to the Fee Cap and payable solely as Deferred Fee Claims. The entry of the Confirmation Order shall, without need for any further action, constitute a consent by each Professional Person to the treatment of Deferred Claims set forth herein.

### 2.6   *Treatment of Allowed Administrative Claims.*

Except to the extent that a holder of an Allowed Administrative Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction of its Allowed Administrative Claim, a SAP Reserve Distribution of Cash in an amount equal to such Allowed Administrative Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim; and (iii) the date or dates agreed to by the Liquidating Trustee and the holder of the Allowed Administrative Claim. All distributions on account of Allowed Administrative Claims shall be made by the Disbursing Agent at the direction of the Liquidating Trustee.

### 2.7   *Treatment of Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive (a) a SAP Reserve Distribution of Cash from the SAP Reserve in an amount equal to such Allowed Priority Tax Claim on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; and (iii) the date or dates agreed to by the Disbursing Agent and the holder of the Allowed Priority Tax Claim. All distributions on account of Allowed Priority Tax Claims shall be made by the Disbursing Agent at the direction of the Liquidating Trustee.

2.8     ***Settlement of Contested Administrative Claims, Priority Claims, Priority Tax Claims or Other Secured Claims.***

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Liquidating Trust may settle or compromise Administrative Claims, Priority Claims, Priority Tax Claims and Other Secured Claims; provided, however, that any such settlement or compromise in accordance with this Section 2.8 shall not require the review or approval of the Bankruptcy Court or any other party in interest; provided, further however, that any Fee Claim filed by a Professional Person shall become an Allowed Administrative Claim only to the extent allowed by Final Order, as provided in Section 2.5 of the Plan.  Notwithstanding the foregoing, any settlement or compromise of any of the aforementioned Claims that involves an Insider shall require Bankruptcy Court approval.

## ARTICLE III:

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1     ***Classification of Claims and Equity Interests.***

3.1.1     Class 1:  Priority Claims

Class 1 consists of all Priority Claims.  Class 1 is unimpaired.

3.1.2     Class 2:  Other Secured Claims

Class 2 consists of all Other Secured Claims.  Class 2 is unimpaired.

3.1.3     Class 3:  Deficiency Claims

Class 3 consists of all Claims relating to the Prepetition Secured Obligations. Class 3 is impaired.

3.1.4     Class 4:  General Unsecured Claims

Class 4 consists of all General Unsecured Claims.  Class 4 is impaired.

3.1.5     Class 5:  WARN Class Priority Claim

Class 5 consists of the WARN Class Priority Claim.  Class 5 is ~~unimpaired~~impaired.

3.1.6     Class 6:  Equity Interests

Class 6 consists of all Equity Interests.  Class 6 is impaired.

3.1.7     Class 7:  Subordinated Claims

Class 7 consists of all Subordinated Claims.  Class 7 is impaired.

## ARTICLE IV:

## PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

4.1    *Satisfaction of Claims and Equity Interests*

The treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to this Article IV and the other provisions of the Plan shall be in full satisfaction, settlement and release of each holder's respective Claims or Equity Interests, as set forth in this Plan, and such Claims or Equity Interests shall be subject to the injunctions contained in Article 12 of this Plan.

Pursuant to the Purchase Agreement, a portion of the purchase price consideration under the Sale consisted of a credit bid ("**Credit Bid**") by Purchaser in the amount of $25,004,484.85. The Credit Bid was in the full amount of the obligations due and owing by the Debtors under the DIP Financing and $18,137,618.32 of outstanding obligations under the Priority Enhanced Notes. The Debtors' obligations on account of the Bridge Loan as of the Petition Date were satisfied in full from the proceeds of the DIP Financing. The portion of the Priority Enhanced Noteholders' Claims that was bid as part of the Credit Bid has been satisfied as a result of the Credit Bid, while the balance of the Priority Enhanced Noteholders' Claims remain outstanding and are Allowed as Deficiency Claims pursuant to Section 4.4 of the Plan. The Claims of the DIP Secured Parties and any and all Claims of the Bridge Lenders shall not be classified nor entitled to any treatment and distribution under the Plan on account of their satisfaction prior to the Effective Date. Any and all Liens of the DIP Secured Parties on the Collateral on account of the DIP Financing shall be deemed extinguished and satisfied and shall have no force or effect as of the Effective Date. Pursuant to the Plan, the Liens of the Notes Agent on the Collateral granted pursuant to the DIP Order shall be assigned to the Liquidating Trust on the Effective Date pursuant to Section 4.4 of the Plan.

4.2    *Class 1:  Priority Claims*

Except to the extent that a holder of an Allowed Priority Claim agrees to a less favorable treatment of such Allowed Priority Claim, or such Allowed Priority Claim has been paid or otherwise satisfied, each holder of an Allowed Priority Claim shall receive a SAP Reserve Distribution of Cash in an amount equal to such Allowed Priority Claim, without interest, on or as soon as practicable after the latest to occur of (i) the Effective Date; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Priority Claim; and (iii) the date or dates agreed to by the Liquidating Trustee and the holder of the Allowed Priority Claim.

4.3    *Class 2:  Other Secured Claims.*

Except to the extent that a holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable classification and treatment, at the option of the Liquidating Trust in the exercise of its sole and absolute discretion, one of the following treatments shall be provided to each holder of an Allowed Other Secured Claim secured by a valid lien that is not subordinate to any liens securing the Claims of the Secured Parties: (a)

the creditor holding such Allowed Other Secured Claim shall retain its lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of preserving and disposing of such collateral, shall be paid to such creditor in full satisfaction, release, and discharge of such allowed secured claim; (b) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a final order determining or allowing such Other Secured Claim, or as otherwise agreed between the creditor and the Liquidating Trust, the creditor holding such Allowed Other Secured Claim will receive a cash payment from the SAP Reserve equal to the amount of its Allowed Other Secured Claim in full satisfaction, release, and discharge of such secured claim; (c) the collateral securing such Allowed Other Secured Claim shall be abandoned to such creditor, in full satisfaction, release, and discharge of such secured claim; or (d) such other less favorable treatment agreed to by such creditor. Any portion of any secured claim that is not secured by collateral or the proceeds thereof shall constitute a General Unsecured Claim (as defined in the Approved Plan) to the extent it is allowed.

4.4     ***Class 3: Deficiency Claims***.

The Deficiency Claims are Allowed Claims, not subject to offset, defenses, counterclaims, reductions or credit of any kind whatsoever. The distributions made pursuant to the Plan on account of the Deficiency Claims held by RSA Lenders shall be made to the Purchaser, as the designee of the RSA Lenders. The holders of Deficiency Claims or their designees, as applicable, shall receive, on account of the Deficiency Claims, their Pro Rata share of the Lender Beneficial Interests and shall receive Liquidating Trust Distributions from the Liquidating Trust on account of such Deficiency Claims as set forth in Section 6.4.9 of the Plan and the provisions of the Liquidating Trust Agreement. Distributions made in respect of the Lender Beneficial Interests shall be subject in all respects to the Intercreditor Agreement and the Liquidating Trust may make distributions directly to the Notes Agent, or as directed by the Notes Agent, for distribution in accordance with the Intercreditor Agreement. The treatment of the Deficiency Claims as provided herein shall be in full and final satisfaction of the Prepetition Secured Obligations.

The Liens held by the Notes Agent, Term Loan Agent or Second Term Loan Lender on the Collateral granted pursuant to the DIP Financing, the Notes, the Term Loan, the Second Term Loan or any other financing document shall be assigned to the Liquidating Trust on the Effective Date pursuant to this Section.

4.5     ***Class 4:  General Unsecured Claims.***

All holders of Allowed General Unsecured Claims (including the WARN Class representative in its capacity as the holder of the WARN Class Unsecured Non-Priority Claim) shall receive their Pro Rata share of the GUC Beneficial Interests in the Liquidating Trust and receive Liquidating Trust Distributions in accordance with and pursuant to Section 6.4.9 of the Plan and the terms and provisions of the Liquidating Trust.

4.6     ***Class 5 WARN Class Priority Claim.***

The ~~Debtors shall pay~~holder of the WARN Class Priority Claim ~~in full by depositing~~shall receive, on the Effective Date, ~~$430,000 in cash into an escrow account (the~~

21

~~"WARN Escrow Account"~~) for the sole benefit of the WARN Class and its agents, advisors and representatives. Distributions shall be made from the WARN Escrow Account in the manner and amounts approved by the Court via separate motion as more particularly described in Section 6.14.2 below; ~~provided,~~ that any legal fees, class fees or any other expenses of any kind or nature whatsoever incurred in connection with the creation or administration of the WARN Class or the WARN Escrow Account shall be payable exclusively from the WARN Escrow Account and not from any other property of the Debtors or any proceeds therefrom. The payment of the WARN Priority Claim into the WARN Escrow Account as set forth herein, along with the Allowance of the WARN Class Unsecured Non-Priority Claim as provided in the WARN Settlement, the WARN Class Priority Beneficial Interest in the Liquidating Trust and shall receive Liquidating Trust Distributions in accordance with and pursuant to Section 6.4.10 of the Plan and the terms of the provisions of the Liquidating Trust. The receipt of WARN Class Priority Beneficial Interests shall satisfy, release, discharge and conclusively resolve ~~any and all Claims of the WARN Class Members and their respective agents and advisors, including legal advisors, against the Debtors under the WARN Act or any other federal, state or local labor law, and the Debtors shall have no further liability of any kind to the WARN Class Members on account of any such laws.~~ the WARN Priority Claim.

### 4.7 *Class 6: Equity Interests.*

On the Effective Date, all Equity Interests in Adoc Holdings shall be deemed cancelled and extinguished. The holders of Equity Interests will not receive any Liquidating Trust Distribution or any other distribution under the Plan, or be entitled to retain any property or interest in property, on account of such Equity Interests. Holders of Equity Interests shall not be required to surrender their certificates or other instruments evidencing ownership of such Equity Interests.

### 4.8 *Class 7: Subordinated Claims.*

The holders of Subordinated Claims will not receive any Liquidating Trust Distribution, or be entitled to retain any property or interest in property, or any other distribution under the Plan, on account of such Subordinated Claims.

### 4.9 *Limitation on Recovery for Claims Against More Than One Debtor.*

A holder of a Claim asserted against more than one Debtor but arising under the same facts shall receive not more than one Liquidating Trust Distribution hereunder on account of such holder's Allowed Claim and shall be enjoined from seeking any further distribution.

## ARTICLE V:

## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

### 5.1 *Classes Entitled to Vote.*

Holders of Deficiency Claims (Class 3 ~~and~~, General Unsecured Claims (Class 4) and WARN Priority Claims (Class 5) are entitled to vote on the Plan. Any holder of a Claim that has been objected to may file a motion pursuant to Bankruptcy Rule 3018 for an order temporarily

allowing such Claim solely for purposes of voting to accept or reject the Plan in accordance with the procedures to be set forth in the order approving the Disclosure Statement, including any deadlines set forth therein.  Classes 1 and 2 are deemed to have accepted the Plan.  Classes 6 and 7 are deemed to have rejected the Plan.

The Debtors have requested that the Bankruptcy Court adopt a presumption that if no holder of a Claim or Equity Interest in a Class of Claims or Equity Interests eligible to vote in a particular Class timely submits a timely Ballot to accept or reject the Plan, then the applicable Class will be deemed to have accepted the Plan.  Accordingly, if any holder of a Claim in Classes 3 or 4 does not wish such a presumption to apply with respect to any Class for which such holder holds a Claim, then the holder should timely submit a Ballot accepting or rejecting the Plan for any such Class.

5.2    *Class Acceptance Requirement.*

Classes ~~3  and~~3, 4 and 5 shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

~~Class 5 shall not be entitled to vote on the Plan and all WARN Class Members shall be deemed unimpaired as a result of the WARN Settlement.~~

5.3    *Cramdown and No Unfair Discrimination.*

In the event that any impaired Class of Claims or Equity Interests rejects the Plan or is deemed to have rejected the Plan, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief.

**ARTICLE VI:**

**MEANS FOR IMPLEMENTATION**

6.1    *Substantive Consolidation of Debtors for Plan Purposes Only.*

Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Chapter 11 Cases for certain purposes related to the Plan, including for purposes of voting, confirmation, and distribution.  On and after the Effective Date:  (i) no Plan  Distributions shall be made under the Plan on account of the Intercompany Claims among the Debtors or on account of a Claim held by a non-Debtor Affiliate against a Debtor; (ii) all guarantees by any of the Debtors of the obligations of any other Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the deemed consolidated Debtors; and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Debtors.  Notwithstanding such substantive

consolidation, however, U.S. Trustee Fees shall be due and payable by each individual Debtor until conversion, dismissal or entry of a final decree for each applicable Debtor.

6.1.1    The substantive consolidation effected pursuant to Section 6.1 of the Plan shall not affect, without limitation, (i) the Debtors' or the Liquidation Trust's (x) defenses to any Claim or cause of action, including without limitation the ability to assert any counterclaim; (y) setoff or recoupment rights, or (z) requirements for any third party to establish mutuality prior to substantive consolidation in order to assert a right of setoff against the Debtors or the Liquidation Trust; or (ii) distributions to the Debtors' and/or the Liquidation Trust out of any insurance policies or proceeds of such policies.

6.1.2    The Disclosure Statement and the Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the substantive consolidation provided for in the Plan.  Unless an objection to the proposed substantive consolidation is made in writing by any creditor purportedly affected by such substantive consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the substantive consolidation proposed by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.  In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

6.1.3    In the event the Bankruptcy Court determines that substantive consolidation of the Debtors is not appropriate, the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and the treatment of and distribution to the different Classes under the Plan on a Debtor-by-Debtor basis.  Furthermore, the Debtors reserve their right to seek confirmation of the Plan without implementing substantive consolidation, and to request that the Bankruptcy Court approve the treatment of and distribution to the different Classes under the Plan on a Debtor-by-Debtor basis.

6.2    *Post-Effective Date Status*

6.2.1    As of the Effective Date, all  Current Directors and Officers of the Debtors shall be deemed to have resigned on such date to the extent that such Current Directors and Officers have not previously resigned  effective and such Current Directors and Officers of the Debtors shall have no further ongoing duties to the Debtors to serve as officers or directors. Effective as of the Effective Date, the sole officer and director of each Reorganized Debtor, as applicable, shall be the Liquidation Trustee.  On or after the Effective Date, the Liquidation Trustee, in accordance with the terms of the Liquidating Trustee Agreement, may elect to dissolve one or more of the Debtors.

6.3    *SAP Reserve*

6.3.1    *Creation*.  Prior to the Effective Date, the Debtors, in consultation with the Creditors' Committee and the Notes Agent, shall determine a reasonable estimate of the amount of Allowed SAP Claims, and such estimate shall be acceptable to the Required Noteholder Parties and the Creditors' Committee in their respective sole discretion.   The Creditors' Committee shall thereafter, but prior to the Effective Date, in coordination with the Debtors file a

24

~~motion seeking an order of the Bankruptcy Court approving such estimate, authorizing~~<span style="color:blue">Confirmation Order shall approve such estimate and authorize</span> the creation of the SAP Reserve in ~~that amount, and approving procedures for administration of and distribution of funds from the SAP Reserve~~<span style="color:blue">such amount</span>.  On the Effective Date, Cash in an amount equal to such estimate shall be transferred from the Debtors' bank accounts to the SAP Reserve to be maintained by the Disbursing Agent and disbursed pursuant to the Plan. ~~The transfer to the SAP Reserve shall occur prior to the determination of the Remaining Cash as required by the Plan.~~

6.3.2    *Instructions to Disbursing Agent*.  As SAP Claims become Allowed Claims, the Liquidating Trustee shall instruct the Disbursing Agent to make a SAP Distribution pursuant to Section 7.2 from the SAP Reserve.

6.3.3    *SAP Residual Funds; Discharge and Release of Disbursing Agent*.  Once all Allowed SAP Claims have been satisfied, the Liquidating Trustee shall instruct the Disbursing Agent to transfer the SAP Residual Funds, if any, into the Liquidating Trust Account and close the SAP Reserve account.  Upon the execution of such instructions, the Disbursing Agent will be deemed to be fully discharged and released from its duties with respect to the SAP Reserve and the SAP Claims.

6.4    **The Liquidating Trust.**

6.4.1    *Execution of Liquidating Trust Agreement*.  On or before the Effective Date, the Debtors, on their own behalf and on behalf of the beneficiaries, shall execute the Liquidating Trust Documents, in a form acceptable to the Creditors' Committee<span style="color:blue">, the WARN Class Representative</span> and the Required Noteholder Parties, each in the exercise of its sole and absolute discretion, and all other necessary steps shall be taken to establish the Liquidating Trust.  This Section 6.4 sets forth certain of the rights, duties, and obligations of the Liquidating Trustee, individually, and the Liquidating Trust Board.

6.4.2    *Purpose of Liquidating Trust*.  The Liquidating Trust shall be established for the sole purpose of liquidating, monetizing and distributing the Liquidating Trust Assets for the benefit of the beneficiaries of the Liquidating Trust with no objective to continue or engage in the conduct of a trade or business.  The Liquidating Trust shall be deemed to be a party in interest for purposes of contesting, settling or compromising objections to Claims or Causes of Action.  In connection with the vesting and transfer of the Liquidating Trust Assets, including the Causes of Action, any attorney-client privilege, work-product protection or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust.  The Debtors, the Reorganized Debtors and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.

6.4.3    *Liquidating Trust Assets*.  The Liquidating Trust shall consist of the Liquidating Trust Assets, including Cash consisting of the Remaining Cash, the Automotive Share Escrow and any additional proceeds of the Automotive Share, SAP Residual Funds and Undeliverable Plan Distributions and the proceeds thereof, including the Liquidating Trust Recoveries.  On the Effective Date, subject to Section 6.4.6 of the Plan, the Debtors shall transfer all of the Liquidating Trust Assets to, and all such Liquidating Trust Assets shall vest in, the

25

Liquidating Trust free and clear of all Liens, Claims, and encumbrances. Such transfer shall be treated, for federal income tax purposes, as a transfer of such assets directly to the beneficiaries of the Liquidating Trust, followed by the transfer of such assets by such beneficiaries to the Liquidating Trust.

6.4.4     *Governance of Liquidating Trust*. The Liquidating Trust will be governed by the Liquidating Trust Board comprised of (i) the Notes-Appointed Board Member, the initial designation of whom shall be made by the Required Noteholder Parties; (ii) the GUC-Appointed Board Member, the initial designation of whom shall be made by the Creditors' Committee; and (iii) the Liquidating Trustee, the initial appointment of whom shall be made jointly by the Notes-Appointed Board Member and the GUC-Appointed Board Member. Subsequent appointments of Liquidating Trust Board Members shall be made in accordance with the provisions of the Liquidating Trust Documents. The initial GUC-Appointed Board Member shall be Jack Raisner, counsel to the WARN Class. The initial Liquidating Trustee shall be John Madden, the Debtors' current CRO. On matters related solely to distributions to the holders of Lender Beneficial Interests, ~~including, but not limited to the timing of distributions of the Remaining Cash available for such holders,~~ the Notes-Appointed Board Member, in consultation with the other board members, shall have sole decision-making authority. On matters related solely to distributions to the holders of GUC Beneficial Interests, ~~including, but not limited to the timing of distributions of Remaining Cash available for such holders,~~ the GUC-Appointed Board Member, in consultation with the other Liquidating Trust Board members, shall have sole decision-making authority. On all other matters, including, but not limited to, matters with respect to the prosecution of Causes of Action transferred to the Liquidating Trust, any request for the Advance, the fixing of the Liquidating Trust Reserve and the distribution of proceeds of Causes of Action, decisions shall be made in accordance with the Plan and the Liquidating Trust Agreement following a majority vote of the three Liquidating Trust Board Members authorizing a specific action. The Notes-Appointed Board Member and the GUC-Appointed Board Member shall be responsible for determining the compensation arrangement for the Liquidating Trustee. The Liquidating Trust Agreement shall govern the removal of any Liquidating Trust Board Member and appointment of any successor Liquidating Trust Board Member. The Liquidating Trust Agreement shall contain details regarding the governance of the Liquidating Trust and composition of the Liquidating Trust Board. The Liquidating Trust Agreement shall specify that all Liquidating Trust Board members shall be U.S. persons.

6.4.5     *Role of the Liquidating Trustee*. In furtherance of, and consistent with the purpose of, the Liquidating Trust and the Plan, the Liquidating Trustee shall, subject to the terms of the Plan and the Liquidating Trust Documents, (i) have the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets ~~to the holders of Lender Beneficial Interests and GUC Beneficial Interests~~ as set forth herein and in the Liquidating Trust Agreement, (ii) have the power and authority to hold, manage, sell, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority, (iii) subject to Section 6.4.6 of the Plan, have the power and authority to investigate, assert, prosecute and resolve, in the names of the Debtors and/or the name of the Liquidating Trust, the Causes of Action pursuant to the direction of the Liquidating Trust Board, (iv) have the power and authority to perform such other functions as are provided in the Plan or Liquidating Trust Documents, and (v) have the power and authority to administer the closure of the Chapter 11 Cases. The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and

the Liquidating Trust Assets, subject to the terms of the Plan and the Liquidating Trust Documents. In all circumstances, the Liquidating Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust, as determined by the Liquidating Trustee in the reasonable exercise of its discretion.

6.4.6    *Limitations on Prosecuting Causes of Action.*   The Debtors, the Reorganized Debtor (if any), the Liquidating Trust, the Liquidating Trustee, any successor thereof and any other Debtor or estate representative or successor of any kind or nature whatsoever, shall be limited in its prosecution of Causes of Action as follows:

a.    The Liquidating Trust may commence, prosecute and pursue Causes of Action against any and all Officers and Directors, including any D&O Claims; provided, that with respect to any such Causes of Action commenced against Current Officers and Directors, the Liquidating Trust, the Liquidating Trustee, any successor thereof and any Debtor, Reorganized Debtor (if any), or estate representative or successor of any kind or nature whatsoever asserting or directly or indirectly benefiting from any such Causes of Action shall be entitled to recover any judgment, settlement, or other proceeds arising from or related to any D&O Claims such Causes of Action against Current Officers and Directors only exclusively from the proceeds of the Debtors' director and officer insurance policies and from no other source.  Neither the Liquidating Trust, the Liquidating Trustee, any successors thereof or any other Debtor, Reorganized Debtor (if any), or estate representative or successor of any kind or nature whatsoever shall for any reason whatsoever (a) execute upon any assets of the Current Officers and Directors, or (b) record or enforce any judgment against the Current Officers and Directors in connection any Causes of Action asserted against any such Current Officers and Directors.

b.    Without the written consent of the Purchaser, the Liquidating Trust *shall not commence or pursue* any Cause of Action against any person identified by the Purchaser as being a customer, vendor, or supplier, of, to or with the Purchaser or as otherwise doing business with Purchaser as of the Effective Date, *but shall be permitted to commence or pursue* any Cause of Action against any person specifically identified on the Retained Action Schedule even if they are a customer, vendor, or supplier, of, to or with the Purchaser or are otherwise doing business with the Purchaser.

6.4.7    *Liquidating Trust Recoveries*.  The Liquidating Trustee shall deposit Liquidating Trust Recoveries in the Liquidating Trust Account for distribution in accordance with Section 6.4.9 of the Plan and the Liquidating Trust Documents; provided, however, that the Liquidating Trust Recoveries may be surcharged as set forth in Section 6.4.9(e) of the Plan.

6.4.8    *Cash*.  The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom), provided, however, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

6.4.9    *Fees, Costs and Expenses of the Liquidating Trust*.

a.    Any and all fees, costs and expenses of the Liquidating Trust, including those of the Liquidating Trustee and any and all professionals retained by the Liquidating Trust shall be paid solely out of Liquidating Trust Assets.

b.    The Liquidating Trustee shall be entitled to reasonable compensation subject to the terms and provisions of the Plan and the Liquidating Trust Documents (including disclosure of the Liquidating Trustee's compensation arrangements).

c.    Subject to the terms and provisions of the Plan and the Liquidating Trust Documents, the Liquidating Trust may retain and reasonably compensate counsel and other professionals on such ordinary and customary and commercially reasonable terms as the Liquidating Trust deems appropriate without Bankruptcy Court approval; provided that counsel retained to prosecute Causes of Action only shall be retained on a contingency fee basis. Any such contingency fee arrangement shall not exceed one-third of the gross amount of Liquidation Trust Recoveries plus the reimbursement of any costs and expenses actually incurred by such counsel. Costs and expenses shall be paid only from the Advance, the Liquidating Trust Reserve and the proceeds of the Causes of Action. Payment of any costs and expenses that cannot be paid on a current basis by the Liquidating Trust shall be deferred by such counsel and shall be payable only when proceeds from the Causes of Action become available to the Liquidating Trust. The Liquidating Trust may retain any professional who represented parties in interest in the Chapter 11 Cases.

d.    If requested by the Liquidating Trust after (i) an affirmative majority vote of the three Liquidating Trust Board Members, and (ii) a representation by the Liquidating Trustee that it reasonably anticipates that Net Proceeds from ~~the remaining Causes of Action held by the~~ Liquidating Trust ~~will exceed $200,000, then the Purchaser~~Recoveries will be sufficient to repay the Advance (as defined below), then the Litigation Lenders shall advance up to $200,000 as a term loan, in ~~as-needed installments~~a single installment, to the Liquidating Trust to finance the costs and expenses associated with prosecuting the Causes of Action transferred to the Liquidating Trust (the "**Advance**"). The ~~Purchaser's undertaking~~Advance shall bear interest at the rate of 20% per annum; provided, that aggregate accrued interest shall not exceed $100,000. The undertaking of the Litigation Lenders to make the Advance is expressly made in reliance on the requirement that the Liquidating Trust repay the Advance pursuant to Section 6.4.10~~(c)(ii)~~ of the Plan.

e.    To the extent the available Liquidating Trust Assets available to the Liquidating Trust after making the distributions required in Section 6.4.10(b~~) and (c)(ii)~~) of the Plan are insufficient to fund the prosecution of the Causes of Action or administer the Liquidating Trust, the Liquidating Trust may surcharge ~~a portion of~~ the distributable proceeds available ~~after repayment of the Advance pursuant to Section 6.4.10(c)(ii) of the Plan~~ to fund the Liquidating Trust Reserve. The amount of distributable proceeds used to fund the Liquidating Trust Reserve shall be determined by the Liquidating Trust Board as the amount reasonably necessary to fund the prosecution of the remaining Causes of Action to the extent that the Liquidating Trust Board first concludes that such Causes of Action are more likely than not to generate Net Proceeds in excess of  the amount of the Liquidating Trust Reserve.

6.4.10   *Distribution of the Liquidating Trust Assets*.

The Liquidating Trustee shall distribute Liquidating Trust Assets (other than the Liquidation Trust Reserve and Automotive Share) in accordance with the Liquidating Trust Documents and the Liquidating Trust's governance mechanisms (and, with respect to distributions made in respect of the Lender Beneficial Interests, subject in all respects to the Intercreditor Agreement) and shall follow and be made in accordance with the following waterfall:

a.   First, to the first $500,000 in Remaining Cash shall be exclusively available for distribution to, or use for the benefit of, holders of GUC Beneficial Interests Pro Rata holders of Deferred Fee Claims Pro Rata in an amount not to exceed $700,000, plus 80% of approved costs.

b.   Second, with respect to the Remaining Cash in excess of $500,000, (i) two-thirds (2/3) of such excess shall be immediately distributed to Purchaser as a reduction of the purchase price paid for the Assets purchased under the Purchase Agreement and shall not in any event be subject to surcharge by the Liquidating Trust or otherwise used to fund the Liquidating Trust Reserve, and (ii) 1/3 of such excess shall be exclusively available for distribution to, or use for the benefit of, holders of GUC Beneficial Interests Pro Rata to the holder of the WARN Priority Beneficial Interests in an amount not to exceed $430,000 for distribution as set forth in Section 6.14 below.

c.   Third, Liquidating Trust Recoveries and the distribution of any other Liquidating Trust Assets (other than Remaining Cash) shall be distributed as follows: to the Litigation Lenders Pro Rata in an amount not to exceed $100,000.

d.   (i) Until the Liquidating Trust Assets available for distribution to Fourth, to the holders of GUC Beneficial Interests from all sources (including, the Remaining Cash, the Automotive Share and Liquidation Trust Recoveries), even if not actually distributed, exceed $775,000, all Liquidating Trust Recoveries shall be exclusively available for distribution to, or use for the benefit of, holders of GUC Beneficial Interests on a pro rata basis, and the Pro Rata in an amount not to exceed (i) $775,000 minus (ii) the Automotive Share.  The holders of Lender Beneficial Interests shall not participate in any such distributions; distribution.

e.   (ii) After the Liquidating Trust Assets available for distribution to the holders of GUC Beneficial Interests from all sources (including, the Remaining Cash, the Automotive Share and Liquidation Trust Recoveries) exceed $775,000, all remaining Liquidating Trust Recoveries shall be immediately distributed to Purchaser until the Advance has been repaid in full; Fifth, to the Litigation Lenders Pro Rata until the outstanding amount of the Advance and any interest accrued thereon has been paid in full.

f.   Sixth, to the holders of Deferred Fee Claims Pro Rata in an amount not to exceed $100,000, plus any remaining approved costs.

g.   (iii) After the Seventh, any remaining Liquidating Trust Assets available for distribution to the holders of GUC Beneficial Interests from all sources (including, the Remaining Cash, the Automotive Share and Liquidation Trust Recoveries) exceed $775,000, and the Advance has been repaid in full and no subsequent draws on the Advance may be made, then all further Litigation Trust Recoveries shall be available for distribution to, or use for the benefit of, Pro Rata,

theshall be distributed (i) two-thirds (2/3) to holders of Lender Beneficial Interests andPro Rata, and (ii) one-third (1/3) to holders of GUC Beneficial Interests.  The distributions to the holders of Lender Beneficial Interests shall be made in the following order of priority, as applicable, first, the distribution allocable to any DIP Secured Party or any of its predecessors, successors, assignees or affiliates shall be distributed to FCO, as agent for the DIP Secured Parties until the Indemnification obligations set forth in Section 8.6 of the DIP Loan Agreement have been indefeasibly satisfied in full and in cash; then, second, the distribution allocable to any RSA Lender or any of its predecessors, successors, assignees or affiliates shall be distributed to Purchaser as the designee of each such Person until all obligations owed to each RSA Lender have been indefeasibly satisfied in full and in cash; and then, third, to each other holder of a Lender Deficiency Claim.  The distributions to holders of Lender Deficiency Claims shall be made pursuant to the applicable provisions of the Intercreditor Agreement, which Intercreditor Agreement shall remain in full force and effect until the satisfaction in full and  in cash of all Lender Deficiency Claims.

(iv)    The distributions to FCO as agent for the DIP Secured Parties, Purchaser or any holder of a Lender Beneficial Interests shall not be delayed by or be contingent on the claims allowance process for determining holders of GUC Beneficial Interests and distributions to the Purchaser and holders of Lender Beneficial Interests shall be made as distributable funds become available.

(v)    All of the Liquidating Trust Assets, except as otherwise provided above, other than the Liquidating Trust Reserve and the Automotive Share may be used to immediately make distributions to the relevant beneficiaries or to fund the administration, prosecution or liquidation of other Liquidating Trust Assets as determined by the Liquidating Trust Board.  The Liquidating Trust Reserve shall be used as set forth in Section 6.4.12 below.  The Automotive Share shall be distributed exclusively to the holders of GUC Beneficial Interests Pro Rata.

Notwithstanding anything in the previous paragraph, Liquidation Trust Assets constituting the Automotive Share shall be deposited into the Automotive Share Escrow and shall be promptly distributed exclusively to the holders of GUC Beneficial Interests Pro Rata.

6.4.11    *Time of Liquidating Trust Distributions*. The timing of distributions not otherwise provided for in this Plan shall be set forth in the Liquidating Trust Documents.

6.4.12    *Liquidating Trust Reserve*. The Liquidating Trust Reserve shall consist of Remaining Cash to the extent reasonably necessary to fund the Liquidating Trust, the Advance, if any, and any additional funding from a surcharge pursuant to Section 6.4.9(e) of the Plan, and shall be held in an account maintained by the Liquidating Trust to fund the prosecution of Causes of Action, the fees, costs and expenses of the Liquidating Trust and the Liquidating Trustee pursuant to the Plan and the Liquidating Trust Documents.  Any amounts remaining in the Liquidating Trust Reserve, if any, upon termination or dissolution of the Liquidating Trust shall be distributed by the Liquidating Trustee to the holders of GUC Beneficial Interests and Lender Beneficial Interests in accordance with Section 6.4.10 of the Plan.

6.4.13    *Liability of Liquidating Trustee and Liquidating Trust Board Members*. Neither the Liquidating Trustee, Liquidating Trust Board Members, nor any of its members or designees, nor any duly designated agent or representative of the Liquidating Trust Board

Members, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent, or representative of the Liquidating Trust Board Members, nor shall any member be liable for any act or omission to be taken or not taken in its capacity as a member of the Liquidating Trust Board Members, other than acts resulting from such member's willful misconduct or gross negligence.

6.4.14    *Assumption of Debtors' Obligations Under Purchase Agreement by Liquidating Trust*.  The Liquidating Trust shall assume all of the Debtors' continuing obligations under the Sale Order and/or Purchase Agreement, including, without limitation, the obligation thereunder with respect to Purchaser such as the Debtors' obligations under Section 5.14 of the Purchase Agreement.  Furthermore, if after the Effective Date it is determined that any of the Assets transferred to the Liquidating Trust are Assets purchased by the Purchaser pursuant to the Sale Order or Purchase Agreement, the Liquidating Trust shall convey such Assets to the Purchaser in accordance with the terms of the Sale Order and/or Purchase Agreement.

6.4.15    *Certain Limitations on Funding*.  Notwithstanding anything in the RSA or the Purchase Agreement or any other agreement or undertaking to the contrary, neither the Purchaser, the Prepetition Secured Parties or the DIP Lenders shall have any obligation whatsoever to provide any financing (whether as debt, as equity or otherwise) or other consideration to the Liquidating Trust or the Reorganized Debtor.  Further, as of the Effective Date, the Purchaser, the Prepetition Secured Parties and the DIP Lenders shall be permanently and irrevocably released from any obligation under the RSA (if any) or the Purchase Agreement or any other agreement or undertaking to provide any such financing or other consideration to the Liquidating Trust or Reorganized Debtor.

6.5    ***Federal Income Tax Treatment of Liquidating Trust***

~~6.5.1      Liquidating Trust Assets Treated as Owned by Certain Creditors~~

6.5.1      ~~6.5.2~~*Liquidating Trust Assets Treated as Owned by Certain Creditors*.  For all federal income tax purposes, all parties (including the Debtors, the Liquidating Trustee, the holders of Deficiency Claims, the holders of the WARN Class Priority Claim and the holders of General Unsecured Claims) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the holders of Allowed Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the Liquidating Trust Assets directly to the holders of Allowed Claims in satisfaction of such Claims followed by (B) the transfer by such holders to the Liquidating Trust of the Liquidating Trust Assets in exchange for beneficial interests in the Liquidating Trust.  Accordingly, the holders of such Claims shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Liquidating Trust Assets.

6.5.2      ~~6.5.3~~Exemption from Transfer Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer from a Debtor to the Liquidating Trust or any other Person or any government, governmental agency or any subdivision, department or other instrumentality thereof, pursuant to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage

tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to the Plan shall be exempt from the imposition and payment of any and all transfer taxes (including but not limited to any and all stamp taxes or similar taxes and any interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of the Plan and the Plan Documents) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

6.5.3      6.5.4 *Tax Reporting.*

a.      The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.5.4.  The Liquidating Trustee shall also annually send to each record holder of a beneficial interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and shall instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns.  The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit.

b.      Allocations of Liquidating Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the Liquidating Trust interests, taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

c.      As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including the Debtors, the Liquidating Trustee, and the holders of Allowed Deficiency Claims, and Allowed General Unsecured Claims) for all federal income tax purposes.

d.      The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

6.5.4      ~~6.5.5~~ *Withholding*.

In connection with the Plan and all distributions under the Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority, and all distributions under this Plan shall be subject to any such withholding, payment, and reporting documents, as may be applicable. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with any such withholding, payment, and reporting requirements. All amounts properly withheld from distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the distributions to such Holder. All entities holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes.

6.5.5      ~~6.5.6~~ *Disputed Ownership Fund*.

The Plan permits the Liquidating Trustee to create separate reserves for disputed or contested Claims. The Liquidating Trustee may, at the Liquidating Trust's sole discretion, file a tax election to treat any such reserve as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Regulation Section 1.468B-9 for United States federal income tax purposes rather than to tax such reserve as a part of the Liquidating Trust. If such an election were made, the Liquidating Trust shall comply with all United States federal and state tax reporting and tax compliance requirements as may be applicable to the DOF, including but not limited to, the filing of a separate United States federal income tax return for the DOF and the payment of United States federal and/or state income tax due.

6.6      **Setoffs.**

Other than with respect to the Deficiency Claims (as to which there are no rights of setoff or recoupment), the Liquidating Trustee may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which such Liquidating Trust Distribution shall be made), rights, or Causes of Action of any nature whatsoever that the Liquidating Trust may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim shall constitute a waiver or release by the Liquidating Trust of any such Claim, right or Cause of Action the Liquidating Trust may have against the holder of such Claim.

6.7      **Noncertificated Liquidating Trust Interests.**

The beneficial interests in the Liquidating Trust shall not be certificated, except as otherwise provided in the Liquidating Trust Documents. Except as set forth in the Liquidating Trust Agreement, the Liquidating Trust Beneficial Interests shall be non-transferable.

6.8      **Dissolution of the Liquidating Trust.**

The Liquidating Trust Agreement shall provide that the Liquidating Trustee shall be discharged and the Liquidating Trust shall be dissolved at such time as (i) all Liquidating Trust Assets have been liquidated, distributed or abandoned; (ii) all distributions required to be made by

the Liquidating Trustee under the Plan have been made; and (iii) the Liquidating Trust is otherwise fully administered.  In no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary of the Effective Date (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets and accomplishment of the purposes of the Liquidating Trustee as set forth in Section 6.4.2 of the Plan.

### 6.9    *Securities Exempt.*

The issuance of the beneficial interests in the Liquidating Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

### 6.10    *Approval of Plan Documents.*

The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order shall constitute Bankruptcy Court approval of the Plan Documents and such transactions. On the Effective Date, the Debtors, the Liquidation Trust and the Reorganized Debtor, if any, shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

### 6.11    *Effectuating Documents; Further Transactions.*

The CRO of Adoc Holdings or any applicable Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions contained herein.

### 6.12    *Cancellation of Existing Securities and Agreements.*

Except for purposes of evidencing a right to Liquidating Trust Distributions under the Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or rights of any holder of a Claim or Equity Interest against any of the Debtors, including, but not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied, as against any Debtor but not as against any other Person.

6.13    *Vesting of Assets.*

Upon the occurrence of the Effective Date and except as otherwise provided in the Plan, title to all of the Assets of the Debtors existing on the Effective Date shall vest in the Liquidating Trust free and clear of all Claims, Equity Interests, Liens, security interests, encumbrances, and other interests. Any and all Liens of the Prepetition Secured Parties on Collateral securing the Prepetition Secured Obligations shall automatically upon the Effective Date, with no further action required, be contributed to the Liquidating Trust.

6.14    *Certain Provisions Concerning WARN Claims*

6.14.1    The WARN Settlement and the WARN Settlement Agreement are hereby incorporated into the Plan by reference. In the event of a conflict between a provision of the Plan and a provision of the WARN Settlement Agreement, the terms of the WARN Settlement Agreement shall govern; provided, that, notwithstanding anything in the WARN Settlement Agreement, the WARN Priority Claim and the WARN General Unsecured Claim shall be treated as set forth herein. Without limiting the generality of the foregoing, any Distributions in respect of the WARN Class Priority Claim and the WARN Class Unsecured Non-Priority Claim shall be made by the Liquidating Trust following the procedures set forth in the WARN Settlement Agreement, including Section 7(b).

6.14.2    ~~6.14.1~~ Each employee of the Debtors who is not a WARN Class ~~Opt-Out that~~ Member and failed to file a timely proof of claim against the Debtors asserting claims under the WARN Act or any other federal, state or local employment law shall have his or her Claim (to the extent any such Claim exists) disallowed in its entirety on the Effective Date and shall not be entitled to receive any distributions from the Debtors or their Estates under the Plan or otherwise.

~~6.14.2    On or before the Effective Date, a representative of the WARN Class and the Debtors shall file a motion requesting that the Court approve the manner and amount of the distributions to be made from the WARN Escrow Account (the "WARN Distributions"). On the later to occur of the Effective Date and the date upon which the Bankruptcy Court approves the WARN Distributions by Final Order, the Disbursing Agent shall make such WARN Distributions in the manner prescribed by the Bankruptcy Court.~~

6.15    *Tax Matters.*

The Liquidating Trustee shall, subject to consultation with the Liquidating Trust Board, (A) be authorized to exercise all powers regarding the Debtors' tax matters, including filing tax returns, to the same extent as if the Liquidating Trustee were the Debtors, (B) complete and file the Debtors' federal, state, and local tax returns, (C) request an expedited determination of any unpaid tax liability of the Debtors under section 505(b) of the Bankruptcy Code for all tax periods of the Debtors ending after the Petition Date through the liquidation of the Debtors as determined under applicable tax laws, to the extent not previously requested, and (D) represent the interest and account of the Debtors before any taxing authority in all matters, including, but not limited to, any action, suit, proceeding, or audit.

**ARTICLE VII:**

**PROVISIONS REGARDING DISTRIBUTIONS**

7.1    *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests.  The Disbursing Agent and/or Liquidating Trustee, as applicable, shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring on or after the Distribution Record Date.  The Disbursing Agent and Liquidating Trustee, as applicable, shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.  However, Lender Beneficial Interests and GUC Beneficial Interests may be transferred or assigned in accordance with the Liquidating Trust Agreement.

7.2    *Allocation of Distributions; No Postpetition Interest on Claims.*

Except as otherwise specifically provided for in the Plan, Distributions made pursuant to the Plan on account of Claims shall be allocated, first, to the principal amount of such Claim (as determined for federal income tax purposes), and, second, to the extent of any excess, the remainder of the Claim.  Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required under the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims and no older of a Claim shall be entitled to interest accruing on or after the Petition Date applicable to such Claim as against any Debtor or the Liquidating Trust.  For the avoidance of doubt, Administrative Claims of tax authorities (including any Administrative Claims of the Internal Revenue Service for any federal taxes, which shall accrue interest at the rate and in the manner established under 26 U.S.C. §§ 6621 and 6622), shall accrue interest at the rate and in the manner specified by the applicable tax regulation.  Nothing herein shall be deemed an admission of the Debtors or the Reorganized Debtors that any such Claim is an Allowed Claim and the parties reserve all rights with respect to such determination.   Moreover, nothing herein shall impair the right of any Person, pursuant to the Intercreditor Agreement or any other agreement or right between creditors, to continue to accrue and charge interest on the obligations underlying its Claim in respect of other creditors and non-debtor Persons.

7.3    *SAP Claim Distributions*.

All SAP Claim Distributions shall be made by the Disbursing Agent at the direction of the Liquidating Trustee, subject to and in accordance with Section 6.3 and the provisions of the Liquidating Trust Documents.

7.4    *Liquidating Trustee.*

All Liquidating Trust Distributions to holders of Lender Beneficial Interests and GUC Beneficial Interests shall be made by the Liquidating Trustee subject to and in accordance with Article VI of the Plan and the provisions of the Liquidating Trust Documents; provided that Distributions in respect of the WARN Class Non-Priority Unsecured Claim shall be made as set

36

forth in Section 6.14 of the Plan and the WARN Settlement Agreement.  The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

7.5    ***Disbursing Agent***.

The Disbursing Agent shall be empowered and directed to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make SAP Reserve Distributions, at the direction of the Litigation Trustee, and (c) exercise such other powers, if any, as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Litigation Trust Documents, as applicable.  The Disbursing Agent may be engaged by the Liquidating Trustee to make Liquidating Trust Distributions.

7.6    ***Delivery of Distributions.***

Subject to Bankruptcy Rule 9010, except as set forth in Section 6.14 of the Plan, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (a) in the Schedules filed with the Bankruptcy Court unless the Debtors or Liquidating Trustee have been notified in writing of a change of address, including by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected in such Schedules for such holder, (b) on the Proof of Claim filed by such holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such holder giving details of a change of address; provided that all Liquidating Trust Distributions to holders of Lender Beneficial Interests under the Plan shall be made to the Purchaser or the Notes Agent, as applicable, as further set forth in the Plan.  ~~If~~Except as set forth in Section 6.14 of the Plan, if any Plan Distribution or other communication from the Debtors or the Liquidating Trust is returned as undeliverable, no Plan Distribution shall be made to such holder unless the Liquidating Trustee is notified of such holder's then current address within ninety (90) days after the later of (i) the Effective Date, (ii) date the communication from the Liquidating Trust was returned or (iii) the date such Plan Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and such undeliverable distributions shall be returned to the Liquidating Trust Account and be distributed in accordance with the Plan.

Distributions to Purchaser shall be made to the address provided in Section 14.2 of the Plan for Purchaser or to such substitute address as Purchaser provides in writing to the Liquidating Trustee at any time.

7.7    ***Manner of Payment Under Plan.***

7.7.1    Unless otherwise provided herein, any Cash payment to be made hereunder may be made by a check or wire transfer.

7.7.2    *Minimum Distributions*.  The Liquidation Trust shall not be obligated to make any payment of Cash of less than fifty dollars to any holder of an Allowed Claim. Notwithstanding anything contained herein to the contrary, if, on the final Distribution Date there remains [$10,000] or less available for distribution to holders of Allowed Claims, in lieu of making

any further distributions to the holders of such Claims, the Liquidation Trust may distribute such Cash to the charity of its choice.

       7.7.3    *Time Bar to Cash Payments*.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim to whom such check was originally issued.  Any Claim in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, any Claims in respect of such voided check shall be discharged and forever barred.

## ARTICLE VIII:

## PROCEDURES FOR CONTESTED CLAIMS

8.1    ***Objections to Claims.***

       The Liquidating Trustee shall be deemed a party in interest entitled to object to, settle, compromise, withdraw or litigate objections to any Claims.  Any objections to SAP Claims or General Unsecured Claims shall be served and filed on or before the Claims Objection Deadline, as such deadline may be extended by the Bankruptcy Court.  Any fees, costs or expenses incurred by the Liquidating Trustee in objecting to (i) SAP Claims shall be funded by the Liquidating Trust Account; (ii) General Unsecured Claims shall be funded by the Liquidating Trust Reserve.

8.2    ***No Distributions Pending Allowance.***

       Notwithstanding any other provision in the Plan, no Liquidating Trust Distributions shall be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim have been settled or withdrawn or have been determined by Final Order, and the Contested Claim, or some portion thereof, has become an Allowed Claim.

8.3    ***Contested General Unsecured Claims Reserve.***

       The Liquidating Trustee shall establish reserves for Contested General Unsecured Claims by withholding 100% of the Liquidating Trust Distributions to which holders of such Contested Claims would be entitled (subject to the setoff rights provided for in Section 6.6) if such Contested Claims were Allowed Claims.

8.4    ***Distributions After Allowance.***

       After such time as a Contested General Unsecured Claim becomes, in whole or in part, an Allowed Claim, the Liquidating Trustee shall distribute to the holder thereof the reserved Liquidating Trust Distributions, as applicable, if any, to which such holder is then entitled under the Plan.  Any such distributions shall be made in accordance with the Plan.  No interest shall be paid on any Contested Claim that later becomes an Allowed Claim.  To the extent such Contested General Unsecured Claim is disallowed, the corresponding reserved amount shall be deposited by

the Liquidating Trustee into the Liquidating Trust Account and shall be distributed as provided for in the Plan.

## ARTICLE IX:

## SETTLEMENT PROCEDURES

9.1     *Claims Administration*.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, all General Unsecured Claims may be compromised and settled by the Liquidating Trust according to the following procedures:

a.     Subject to Subsection 9.1(b) hereof, the following settlements or compromises do not require the review or approval of the Bankruptcy Court or any other party in interest if such settlement or compromise is unanimously approved by the Liquidating Trust Board:

(i)     The settlement or compromise of a General Unsecured Claim pursuant to which such Claim is Allowed in an amount equal to $500,000 or less; and

(ii)     The settlement or compromise of a Claim where the difference between the amount of the Claim listed on the Debtors' Schedules and the amount of the Claim proposed to be Allowed under the settlement is equal to or less than $500,000.

b.     The following settlements or compromises shall be submitted to the Bankruptcy Court for approval:

(i)     Any settlement or compromise not described in Subsection 9.1(a) hereof; and

(ii)     Any settlement or compromise of a Claim that involves an Insider, an Officer or a Director.

9.2     *Settlement of Claims and Causes of Action*.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, all Causes of Action and Claims of the Liquidating Trust related to Causes of Action may be compromised and settled by the Liquidating Trust according to the following procedures:

a.     For Causes of Action and Claims of the Liquidating Trust related to Causes of Action, *regardless* of the Demand Amount:

(i)     The Liquidating Trust will not agree to any settlement unless it is reasonable in its judgment upon consideration of (a) the probability of success if the Cause of Action is litigated; (b) the complexity, expense and likely duration of litigation; (c) the difficulty in

collection of any judgment; and (d) the fairness of the settlement to the Liquidating Trust, the Debtors' estates and the holders of beneficial interests in the Liquidating Trust.

(ii)    The Liquidating Trustee will enter into a written agreement with respect to each settlement, which agreement shall be shared with the following Persons at their request or as otherwise required by the Liquidating Trust Agreement: members of the Liquidating Trust Board and the Office of the United States Trustee for the District of Delaware.

b.    The Liquidation Trustee is authorized to enter into any settlement for Causes of Action, and Claims of the Liquidating Trust related to Causes of Action, in which (i) the Demand Amount is less than $500,000 and (ii) the settlement was unanimously approved by the Liquidating Trust Board, without filing a motion with the Bankruptcy Court or otherwise providing notice to any other Persons.

c.    For Causes of Action and Claims of the Liquidating Trust related to Causes of Action, where (i) the Demand Amount is $500,000 or more, (ii) where one or more counterparty/defendant was an Insider, Officer or Director of one of the Debtors, or (iii) the settlement was not unanimously approved by the Liquidating Trust Board, then after approval of any settlement by the Liquidating Trust Board, the Liquidating Trustee shall file an omnibus or individual motion for approval of settlement or compromise pursuant to Bankruptcy Rule 9019. Any such motion shall be served upon: (i) the United States Trustee; (ii) all parties of record in the respective litigation if litigation has commenced; (iii) the members of the Liquidating Trust Board; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002. Service of such motion on the foregoing parties shall constitute valid and sufficient notice of the settlement and the motion, notwithstanding the requirements of Bankruptcy Rule 2002(a)(3).

## ARTICLE X:

## EXECUTORY CONTRACTS

10.1    *Rejection of Executory Contracts.*

Any Executory Contract which has not been assumed with the approval of the Bankruptcy Court on or prior to the Confirmation Date shall be deemed a rejected Executory Contract by the applicable Debtor effective on the Confirmation Date. The Plan shall constitute a motion to reject such Executory Contracts and the Debtors shall have no liability thereunder, except that any Claim related to a rejected Executory Contract shall be treated as a General Unsecured Claim subject to filing of a proof of claim pursuant to Section 10.2 below. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interest of the applicable Debtor, its Estate, and all parties in interest in the Chapter 11 Cases.

10.2    *Time for Filing Rejection Claims.*

Claims arising from the rejection of Executory Contracts pursuant to Section 10.1 of the Plan must be filed with the Claims Agent within twenty-one (21) days after the service of the Notice of Effective Date. Any Claims for which a proof of claim is not filed and served within

such time will be forever barred from assertion and shall not be enforceable against the Debtors or their Estates, Assets, properties or interests in property or the Liquidating Trust. All proofs of Claims arising from the rejection of Executory Contracts that are timely filed as provided herein shall be treated under the Plan as General Unsecured Claims upon their Allowance.

10.3    *Reservation of Rights.*

Nothing contained in the Plan, including this Section 10.3, shall constitute a waiver of any Claim, right or Cause of Action that the Debtors or the Liquidating Trust, as the case may be, may hold against the insurer under any policy of insurance or insurance agreement.

## ARTICLE XI:

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

11.1    *Conditions Precedent to Confirmation.*

The Plan will not be confirmed, and the Confirmation Order will not be entered, until and unless each of the following conditions has occurred or has been waived pursuant to Section 11.3 of the Plan:

a.    the Confirmation Order shall be acceptable to the Required Noteholder Parties and the Creditors' Committee, each in the exercise of its sole and absolute discretion;

b.    the amount of the SAP Reserve authorized by the Bankruptcy Court shall be acceptable to the Required Noteholder Parties and the Creditors' Committee, each in the exercise of its sole and absolute discretion;

c.    the WARN Settlement shall have been approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 and the Bankruptcy Court shall find in connection with such approval that the WARN Settlement was entered into in good faith and is in the best interests of the Debtors and their respective Estates;

b.    d.  the Confirmation Order shall be entered no later than six (6) months from the Confirmation Date, time being strictly of the essence; and

c.    e.  all of the Plan Documents shall be acceptable to the Required Noteholder Parties and the Creditors' Committee, each in the exercise of its sole and absolute discretion.

11.2    *Conditions Precedent to the Effective Date.*

The Effective Date of the Plan shall not occur unless and until each of the following conditions has occurred or has been waived pursuant to Section 11.3 of the Plan:

a.    the Confirmation Order (and any order specifying the SAP Reserve) shall have been entered, shall have become a Final Order, and shall be acceptable to the Required

41

Noteholder Parties and the Creditors' Committee, each in the exercise of its sole and absolute discretion;

b.        all Plan Documents, agreements and other instruments which are exhibits to the Plan or included in the Plan Supplement shall be acceptable to the Required Noteholder Parties and the Creditors' Committee, each in the exercise of its sole and absolute discretion, and shall have been executed and delivered by the parties thereto;

c.        all actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed;

d.        the Effective Date shall have occurred no later than six (6) months after the Confirmation Date, time being strictly of the essence; and

e.        the Liquidating Trustee and the Debtors shall have executed the Liquidating Trust Agreement and any other Liquidating Trust Documents.

### 11.3   *Waiver of Conditions to Confirmation and Effective Date.*

The Debtors, the Required Noteholder Parties and the Creditors' Committee, collectively, but each in the exercise of its sole and absolute discretion, may waive, in whole or in part, any of the conditions to the confirmation or effectiveness of the Plan.  Any such waiver of a condition may be effected at any time, without prior notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

### 11.4   *Effect of Failure of Conditions to the Effective Date.*

In the event the conditions specified in Section 11.2 of the Plan have not been satisfied or waived in accordance with Section 11.3 of the Plan, and upon notification submitted by the Debtors, with the consent of the Required Noteholder Parties and the Creditors' Committee, to the Bankruptcy Court (a) the Confirmation Order shall be vacated; (b) no Liquidating Trust Distributions under the Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) or to prejudice in any manner the rights of the Debtors or any other Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) in any proceedings further involving the Debtors.  Neither the Disclosure Statement, any statement contained in the Disclosure Statement nor the Plan may be used in these Chapter 11 Cases, or in any action, other than in connection with confirmation of the Plan.  In the event that the Plan is not confirmed, or is confirmed but does not become effective, the Disclosure Statement, any statements contained in the Disclosure Statement and the Plan shall have no force or effect, and neither the Disclosure Statement, any statements contained in the Disclosure Statement nor the Plan shall be admissible in any court or legal forum for any purpose whatsoever.

**ARTICLE XII:**

**EFFECT OF CONFIRMATION**

12.1    *Rights of Action/Reservation of Rights.*

Except as otherwise provided in the Plan or the Confirmation Order (including in Section 6.4.6 of the Plan), or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, and except with respect to the Debtor Releasees and Holder Releasees, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall reserve, retain and may enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) all Causes of Action.  Except as otherwise expressly set forth herein (including in Section 6.4.6 of the Plan), nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors may have or which the Liquidating Trustee may choose to assert (subject to the Liquidating Trust governance provisions), under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, any and all Claims against any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof), to the extent such Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, their officers, directors or representatives.  The Liquidating Trustee shall be deemed the appointed representative to, and may, except as otherwise provided in the Plan or the Confirmation Order (including in Section 6.4.6 of the Plan), pursue, litigate, compromise, settle, transfer or assign any such rights, claims, Causes of Action, suits or proceedings as appropriate, in accordance with the best interests of the Liquidating Trust and its beneficiaries.

12.2    *Satisfaction of Claims and Termination of Equity Interests.*

12.2.1    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons (and any government, governmental agency or any subdivision, department or other instrumentality thereof) shall be precluded from asserting against property of the Estates or property of the Debtors and the Liquidating Trust, or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities or Equity Interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date.

12.2.2    No Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) holding a Claim may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under the Plan, other than Assets required to be distributed to that Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) under the Plan.

12.3    *Term of Injunctions or Stays.*

12.3.1    Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons (and any government, governmental agency or any subdivision, department or other instrumentality thereof) that hold, have held, or may hold a Claim or other debt or liability against the Debtors or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of, or on the basis of, such Claims, debts or liabilities, or terminated Equity Interest or rights (other than actions brought to enforce any rights or obligations under the Plan or the Confirmation Order): (i) commencing or continuing any action or other proceeding against the property of the Estates or property of the Debtors, the Liquidating Trust or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against property of the Estates or property of the Debtors, the Liquidating Trust or their respective property; (iii) creating, perfecting or enforcing any Lien or encumbrance against property of the Estates or property of the Debtors, the Liquidating Trust or their respective property; (iv) asserting any setoff or right of subrogation of any kind against any debt, liability or obligation due the Estates or property of the Debtors, the Liquidating Trust or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.

12.3.2    All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.4    *Injunction Against Interference With Plan.*

**Upon the entry of the Confirmation Order all holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.**

12.5    *Releases and Injunction Related to Releases.*

12.5.1    *Releases by Debtors and Estates.*  **On the Effective Date, each of the Debtors, the Reorganized Debtors, and each Debtor's Estate conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release and shall be deemed to have provided a full discharge and release to each of the DIP Secured Parties, Prepetition Secured Parties, Purchaser, FCO, the Creditors' Committee and each of its members in their capacity as members of the Creditors' Committee only, and each of the foregoing Persons' respective Related Persons (but expressly excluding them in any capacity as an equity holder of any of the Debtors) (each a "<u>Debtor Releasee</u>", collectively, the "<u>Debtor Releasees</u>") and their respective property from any and all claims, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever (collectively, the "<u>Debtor Released Claims</u>"), including any derivative claims asserted or which could be asserted on behalf of any of the Debtors, each Debtor's Estate and/or the Reorganized Debtors, whether liquidated or unliquidated, known or unknown, foreseen or unforeseen, contingent or non-contingent, existing or arising, in law, equity, or otherwise, that the**

Debtors, each Debtor's Estate, the Reorganized Debtors, the Liquidating Trust, or their respective predecessors, successors or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, each Debtor's Estate, the Reorganized Debtors, the Liquidating Trust, any non-Debtor affiliates, the Chapter 11 Cases, the Sale, the purchase or sale of any of the Debtors' Assets, the RSA, the Plan, the Purchase Agreement, the DIP Financing, Bridge Loan, Notes, Term Loan, or Second Term Loan (collectively, and each individual element thereof, the "Debtor Release"); provided further, however, that the Release provided for herein shall not release any Officers and Directors from any D&O Claims, subject in all respects to the terms and conditions of the Plan, including the limitations set forth above limiting the collection of judgments against Current Officers and Directors to the proceeds of applicable insurance; provided further, however, that, subject to the immediately preceding proviso, the Release provided for herein shall not release any Debtor Releasee specifically identified on the Retained Action Schedule from any Cause of Action identified on the Retained Action Schedule.

       12.5.2    *Releases by Holders of Claims and Interests*.  Except as otherwise expressly provided in the Plan or the Confirmation Order, upon the Effective Date and effective simultaneously with substantial consummation of the Plan, each Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) (a) that has voted to accept the Plan and has not opted out from granting the releases in this Section 12.5.2 or is deemed to have accepted the Plan (b) that has voted to reject the Plan but has opted to grant the releases in this Section 12.5.2, or (c) who otherwise agrees to provide the releases set forth in this Section 12.5.2, shall be deemed to have unconditionally released each and all of the Debtor Releasees, Directors and Officers of the Debtors and Insiders of the Debtors (collectively, the "Holder Releasees") of and from any and all Claims, obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, that are or may be based in whole or in part upon any act, omission, transaction, event or other occurrence taking place or existing on or before the Effective Date that are in connection with the Debtors or any of them, or their respective assets, property and Estates, the Chapter 11 Cases or the Plan or the Disclosure Statement (collectively, the "Holder Released Claims").

       12.5.3    [Reserved]*Certain Limits on Releases*.  Nothing in the Plan shall impair, release, expunge or affect the individual direct claims, rights or causes of action of any WARN Class Member against the DIP Secured Parties, Prepetition Secured Parties, Purchaser or FCO for any violations of the WARN Act or any other similar state laws relating to the Debtors and all such claims rights or causes of action are expressly reserved. In the interest of clarity, it is expressly acknowledged that this Section 12.5.3 applies only to claims, rights and causes of action that are the individual claims of WARN Class Members and were not property of the Estates on the before the Effective Date.  Further, nothing in this Section 12.5.3 shall limit any of the releases set forth in the WARN Settlement Agreement, nor shall this section of the Plan constitute consent of the DIP Secured Parties,

**Prepetition Secured Parties, Purchaser or FCO to the certification of any class of employees or any agreement, consent, stipulation or waiver by any of the DIP Secured Parties, Prepetition Secured Parties, Purchaser or FCO with respect to any such claims, rights or causes of action. The DIP Secured Parties, Prepetition Secured Parties, Purchaser and FCO reserve all of their rights, claims and defenses with respect to such claims or causes of action.**

12.5.4    *Injunction Related to Releases.*  **Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons (and any government, governmental agency or any subdivision, department or other instrumentality thereof) who have held, hold or may hold Liens, Claims, liabilities or encumbrances against or Equity Interests in, any or all of the Debtors, along with their respective present or former employees, agents, officers, directors, or principals, or the Debtors' Assets are permanently enjoined, with respect to any such Liens, Claims, liabilities or encumbrances or Equity Interests, as of the Confirmation Date, but subject to the occurrence of the Effective Date, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting any Holder Releasees, the Liquidating Trust, Liquidating Trustee, any Liquidating Trust Board Member or any of their respective assets; (b) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any Holder Releasees, the Liquidating Trust, the Liquidating Trustee, any Liquidating Trust Board Member or any of their respective assets (including, without limitation, the Liquidating Trust Assets); (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the any Holder Releasees, the Liquidating Trust, the Liquidating Trustee, any Liquidating Trust Board Member or any of their respective assets (including, without limitation, the Liquidation Trust Assets); (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; (e) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due any Debtor Releasee or any Holder Releasee or against their respective assets; and (f) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan, such as commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are extinguished or released pursuant to the Plan; provided, however, that nothing contained herein shall preclude such Persons (and any government, governmental agency or any subdivision, department or other instrumentality thereof) from exercising their rights arising under and consistent with the terms of the Plan.**

12.5.5    *Deemed Consent*.  **~~By~~Except as set forth in Section 12.5.3, by voting to accept the Plan or accepting any Liquidating Trust Distributions under the Plan, and not opting out from granting the releases in Section 12.5.2 of the Plan, each holder of a Claim will be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the exculpations, releases and injunctions set forth in the Plan.**

12.5.6    *No Waiver.*  **Nothing in Section 12.5.1 shall be deemed to prevent the Liquidating Trust or any other duly appointed estate representative from asserting any**

**Causes of Action against the Officers and Directors, subject at all times and in all respects to the limitations otherwise set forth in the Plan and Confirmation Order, including the limitations set forth in Section 6.4.6(a) of the Plan expressly limiting recoveries in respect of Causes of Action against Current Officers and Directors to the proceeds of the Debtors available insurance. Nothing in Section 12.5.1 of the Plan shall release or waive any estate Causes of Action, except for such Causes of Action against the Debtor Releasees. Subject to Section 6.4.6 of the Plan, all Causes of Action not released under Section 12.5.1 of the Plan shall be expressly preserved, except as otherwise set forth in the Plan. Notwithstanding anything to the contrary in this Section, the Liquidation Trust or any other duly appointed Estate representative shall not be entitled or permitted to assert any of the Excluded Causes of Action.**

12.6  ***Settlement of Claims and Causes of Action Between Debtors, Creditors' Committee and Secured Parties.***

In accordance with section 1123(b)(3) of the Bankruptcy Code, the Plan provides for the settlement between the Debtors, Creditors' Committee and Secured Parties. These parties acknowledge and agree that the releases, exculpations and injunctions afforded the Debtor Releasees and the Holder Releasees pursuant to the terms and provisions of the Plan are (i) supported by consideration, (ii) integral parts of the settlement embodied in the Plan and (iii) necessary to the liquidation that is the subject of the Plan.

12.7  ***Disallowed Claims and Disallowed Interests.***

On and after the Effective Date, the Debtors and the Liquidating Trust shall be fully and finally discharged of any and all liability or obligation on a Disallowed Claim or a disallowed Equity Interest, and any Order disallowing a Claim or an Equity Interest which is not a Final Order as of the Effective Date solely because of any Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date. The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) disallowing all Claims and Equity Interests to the extent such Claims and Equity Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Equity Interests, and Claims for unmatured interest and (b) disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

12.8  ***Exculpation.***

**Pursuant to section 1125(e) of the Bankruptcy Code, the CRO, the members of the Debtors' board of directors, each of the Debtors' officers who served in such capacity on and after the Petition Date and the Debtors' professionals, the Committee members and the Committee's professionals (collectively, the "Exculpated Parties") shall not be liable for any Cause of Action arising in connection with or out of the administration of the Chapter 11 Cases, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, <u>except</u> for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court;**

**provided that this exculpation shall not apply to any D&O Claim asserted by the Liquidating Trust (and only the Liquidating Trust) against any Current Officers and Directors pursuant to Section 6.4.6 of the Plan, subject in all respects to the terms and conditions of the Plan, including any such terms and conditions set forth in Section 6.4.6 of the Plan limiting the collection of judgments against Current Officers and Directors to the proceeds of applicable insurance.**

12.9    *Injunctions.*

12.9.1    **On the Effective Date and except as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtor Releasees, the Holder Releasees, property of the Estates or property of the Debtors, the Liquidating Trust Assets, the Liquidating Trustee, the Liquidating Trust Board Members or the current members of the Creditors' Committee, with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan or the Confirmation Order):**

a.    **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

b.    **enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;**

c.    **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

d.    **asserting any setoff, right of subrogation or recoupment of any kind.**

12.10    *Limitations on Actions Against Current Directors and Officers.*

Notwithstanding anything in the Plan, neither the Liquidating Trustee nor any other Estate representative or successor thereof may assert any Cause of Action against any Current Officers and Directors, except as provided herein.

## ARTICLE XIII:

## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases, or that relate to any of the following:

a.    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any

inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

b.      To hear and determine all applications for the payment of Fee Claims.

c.      To hear and determine any dispute or reconcile any inconsistency arising in connection with the Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of the Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

d.      To hear and determine any matter concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

e.      To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

f.      To hear and determine any rights, Claims or Causes of Action, including without limitation Claims or Causes of Action identified on the Retained Action Schedule, held by, transferred to or accruing to the Liquidating Trust pursuant to the Bankruptcy Code, including any settlement or compromise thereof.

g.      To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

h.      To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation.

i.      To ensure that all Plan Distributions are accomplished as provided herein.

j.      Except for the Deficiency Claims, which are Allowed in full in accordance with the terms of the Plan, to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim.

k.      To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

l.      To recover all Liquidating Trust Assets, wherever located.

m.      To enter a final decree closing the Chapter 11 Cases.

n.      To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

o.      To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Plan and these Chapter 11 Cases.

p.      To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

q.      To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Liquidating Trust Documents.

r.      To resolve any dispute under the Liquidating Trust Documents among the Liquidating Trust Board Members.

s.      To hear and determine any dispute or suit regarding setoff or recoupment.

## ARTICLE XIV:

## MISCELLANEOUS PROVISIONS

14.1    *Payment of Statutory Fees.*

On the Effective Date, and thereafter as may be required, the Liquidating Trustee shall pay all fees required to be paid pursuant to section 1930 of title 28 of the United States Code and all fees required to be paid to the office of the U.S. Trustee until the Chapter 11 Cases are closed.

14.2    *Notices.*

Any notices, requests, and demands to or upon the Liquidating Trust or any Liquidating Trust Member, the Notes Agent, the Purchaser, the Creditors' Committee or the Debtors, to be effective, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to the following:

If to the Notes Agent or Purchaser, to:

FCO MA CODA HOLDINGS LLC
Attention:  Josh Pack
1345 Avenue of the Americas, 46th Floor
New York, NY  10105

with a copy to:

SIDLEY AUSTIN LLP
Jeremy E. Rosenthal
555 West Fifth Street
Los Angeles, California  90013

If to the Creditors' Committee, to:

BROWN RUDNICK LLP
William R. Baldiga
H. Jeffrey Schwartz
Bennett S. Silverberg
Seven Times Square
New York, New York  10036
If to the Debtors, to:

FOX ROTHSCHILD LLP
Jeffrey M. Schlerf, Esq.
Citizens Bank Center
919 North Market Street, Suite 1600
P.O. Box 2323
Wilmington, Delaware  19899-2323

14.3    ***Headings.***

The headings and other captions used in the Plan are for reference purposes only, and shall not affect the meaning or interpretation of the Plan in any way.

14.4    ***Governing Law.***

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a document in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

14.5    ***Notice of Entry of Confirmation Order and Relevant Dates.***

Promptly upon entry of the Confirmation Order, the Debtors shall file on the docket and serve upon parties who have entered their appearance a notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

14.6    ***Modification of the Plan and Amendments.***

The Plan may only be amended, modified or supplemented (i) in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, and (ii) only with the prior

written consent of the Required Noteholders and the Creditors' Committee, which consent may be withheld in their respective sole and absolute discretion.

### 14.7    *Revocation, Withdrawal or Non-Consummation of Plan.*

If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if confirmation or consummation of the Plan does not occur as to any Debtor, then, as to such Debtor, (a) the Plan shall be null and void in all respects and (b) any settlements and compromises embodied in the Plan, and any document or agreement executed pursuant the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained in the Plan and no acts taken in preparation for consummation of the Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or any other Person, (ii) prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor or (iii) constitute or be deemed to constitute an admission of any sort by the Debtors or any other Person.  None of the filing of the Plan, the taking by the Debtors or other party in interest of any action with respect to the Plan or any statement or provision contained herein shall be or be deemed to be an admission by the Debtors or other party in interest against interest, or be or be deemed to be a waiver of any rights, Claims or remedies that the Debtors or other party in interest may have, and until the Effective Date all such rights and remedies are and shall be specifically reserved.  In the event the Plan is not confirmed and the Confirmation Order is not entered, the Plan and the Plan Documents and any document contained in the Plan Supplement, and any statement contained herein or therein, may not be used by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) against the Debtors and other parties in interest.

### 14.8    *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of all Claims and Equity Interests and their respective successors and assigns, including the Liquidating Trust and the Liquidating Trust Board Members.

### 14.9    *Severability of Plan Provisions.*

If, prior to the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.10   *No Admissions.*

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THE PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

14.11   *Dissolution of the Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall be dissolved automatically and its members will be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases and the Liquidating Trust; provided, however, that the Creditors' Committee shall continue to exist for the following purposes:

a.      preparing and prosecuting (and, if necessary, opposing) final fee applications, as applicable, and Creditors' Committee expense reimbursement requests; and

b.      objecting to Administrative Claims and Priority Claims and prosecuting such objections until such objections are assumed by the Liquidating Trustee.

14.12   *Time.*

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as in effect on the Petition Date shall apply.  With regard to all dates and the periods of time set forth or referred to in the Plan, time is of the essence.

14.13   *Successors and Assigns.*

The rights, benefits and obligations of any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof).

14.14   *Conflict between Plan, Disclosure Statement and Plan Documents.*

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, any Plan Document or any document in the Plan Supplement, the terms and provisions of the Plan shall control and govern.

14.15   *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

14.16   ***Plan Exhibits.***

Any and all exhibits to the Plan or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the Confirmation Objection Deadline, unless the Plan provides otherwise.  Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims or Equity Interests may obtain a copy of any such document upon written request to the Debtors in accordance with Section 1.3 of the Plan or online at www.kccllc.net.  The Debtors explicitly reserve the right to, in the exercise of its sole and absolute discretion, modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Confirmation Objection Deadline.

[Signature on following page.]

Dated:  Wilmington, Delaware

~~September~~January __,  ~~2013~~2014

**Adoc Holdings, Inc.,** *et al.*, **Debtors and Debtors in Possession**

By:  _____

Name:

Title:

FOX ROTHSCHILD LLP
Jeffrey M. Schlerf (DE Bar No. 3047)
Citizens Bank Center
919 North Market Street, Suite 1600
P.O. Box 2323
Wilmington, Delaware  19899-2323
Telephone:  (302) 654-7444
Facsimile:  (302) 656-8920

*Counsel for the Debtors*

Document comparison by Workshare Compare on Tuesday, January 14, 2014
2:40:41 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://LOSANGELES_DMS/LOSANGELES/1038771/1 |
| Description | #1038771v1<LOSANGELES> - rjk-comments to Third Amended Plan |
| Document 2 ID | interwovenSite://LOSANGELES_DMS/LOSANGELES/1038771/4 |
| Description | #1038771v4<LOSANGELES> - rjk-comments to Third Amended Plan |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 86 |
| Deletions | 207 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 301 |